**Josef T. APPELHANS, Jr., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 88–3828.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1989.

Decided June 19, 1989.

---

John Leon Martin, Washington, D.C., (Christopher K. Speed, Arthur & Speed, Ltd., Arlington, Va., on brief), for plaintiff-appellant.

Melvin Gilbert Olmscheid, Office of the Judge Advocate Gen., Dept. of the Army (Henry E. Hudson, U.S. Atty., Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va. on brief), for defendant-appellee.

Before ERVIN, Chief Judge, and WINTER and WILKINSON, Circuit Judges.

ERVIN, Chief Judge:

In a line of cases beginning with *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court has consistently held that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, bars military personnel from suing the sovereign for alleged torts that occur "during the course of an activity incident to service." *United States v. Johnson*, 481 U.S. 681, 682, 107 S.Ct. 2063, 2064, 95 L.Ed. 2d 648 (1987). This case presents the familiar issue of whether the *Feres* doctrine forbids recovery to a former military serviceman for alleged medical malpractice by military doctors while the serviceman was on active duty status. The reported decisions on this subject uniformly hold that, as a general rule, injuries sustained as a result of medical treatment at military facilities are "incident to service." Finding nothing to distinguish this case, we affirm the trial court's dismissal of the plaintiff's claim.

### I.

Josef Appelhans, Jr., the appellant, served in the United States Army from 1969 until 1985. During the period of his enlistment, Appelhans saw duty in Vietnam and received numerous decorations, including the Vietnam Cross of Gallantry. For reasons that are not pertinent to this appeal, Appelhans was discharged for bad conduct after a court-martial in April of 1983. After the court-martial, Appelhans was placed on indefinite excess leave pending review of his sentence by the United States Court of Military Appeals. We note that excess leave is mandated in these circumstances by 10 U.S.C. § 876a. Under the terms of his excess leave, Appelhans was not entitled to pay or to accrued leave. He was required to remain in the continental United States, to keep the Army apprised of his whereabouts, and was subject to recall to military control at any time. Appelhans remained on excess leave until September 24, 1985, when the Court of Military Appeals denied his petition for review. He was formally discharged on December 3, 1985.

While on excess leave, Appelhans remained on active duty status and was accordingly entitled to health care at Army hospitals. *See* 10 U.S.C. § 701(e). On July 30, 1983, he entered DeWitt Army Hospital at Fort Belvoir for treatment of a condition diagnosed as venous thrombosis. On November 13, 1987, Appelhans filed this action against the United States alleging that doctors at DeWitt negligently failed to diagnose and treat an infected venous ulceration and venous insufficiency and that as a result he suffers continuing pain and disa-

bilities. The United States moved to dismiss the action on the ground that Appelhans' claim was barred by the *Feres* doctrine. The district court granted the government's motion and Appelhans now appeals.

## II.

Since its initial decision in *Feres, supra,* the Supreme Court has sharply limited the ability of members of the uniformed services to recover damages under the FTCA. *Feres* held that "the Government is not liable ... for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. The Court, while recognizing that this exception to the FTCA's broad waiver of sovereign immunity was not expressly required by the Act, offered two rationales for the necessity of barring tort actions by soldiers. First, the "distinctively federal" relationship between the government and its soldiers would be undermined by holding military personnel accountable under the variations in state tort law according to the situs of the alleged tort. *See, Feres,* 340 U.S. at 142–144, 71 S.Ct. at 157–158. Second, the Court noted the comprehensive system of statutory benefits granted to service members and concluded that Congress must have intended them to be the sole remedy for service related injuries. *See, Id.* at 144, 71 S.Ct. at 158. In later decisions, the Court offered as a third rationale the fear that frequent judicial inquiry into military decision making would have a deleterious impact on military discipline and effectiveness. *See, e.g., United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), and *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

■ The basic rule, which has come to be known as the *Feres* doctrine, is that service members are barred from recovering damages for injuries "incident to service." *See, e.g., United States v. Shearer,* 473 U.S. at 57, 105 S.Ct. at 3042–3043. In determining whether particular injuries were in fact "incident to service," courts typically look to the three rationales articulated above. Although some courts and commentators once questioned the continuing vitality of the first and second rationales, the Supreme Court recently reaffirmed the importance of all three rationales in *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

■ The question presented here is thus whether injuries sustained during medical treatment at a military hospital occurred "incident to service" where the serviceman was on excess leave pending discharge. Appelhans argues that the mere fact he was on active duty status at the time of his alleged injuries is insufficient to bar recovery. As Appelhans correctly points out, servicemen on active duty status have been allowed to recover damages in special circumstances where their injuries clearly were not "incident to service." *See, e.g., Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) (serviceman who was on furlough and off-base allowed to recover for injuries due to collision involving an Army vehicle).

We agree that Appelhans' active duty status, standing alone, is insufficient to invoke the *Feres* doctrine's bar. The fact that his injury occurred as a result of medical treatment by military doctors, however, conclusively demonstrates that that injury was "incident to service." The majority of decisions in this and other circuits, especially cases decided since *Johnson,* have held that medical treatment at military facilities is "incident to service." In *Scheppan v. United States,* 810 F.2d 461 (CA4 1987) (decided prior to *Johnson*), this circuit held that the plaintiff, a Public Health Service ("PHS") doctor, could not recover for injuries allegedly due to malpractice at a PHS hospital. Noting that PHS personnel are members of the uniformed service, the panel ruled that Scheppan's injuries occurred in the course of service. *Scheppan,* 810 F.2d at 463. The court reached this result despite the fact that Scheppan was on medical leave at the time of her injury. The implicit, although unstated, rule of *Scheppan* is that leave status is irrelevant to determining whether injuries

sustained by active duty personnel at military medical facilities are "incident to service." *See also Kendrick v. United States,* 877 F.2d 1201 (CA4 1989) (medical treatment held incident to service even though soldier was on Army's Temporary Disability Retirement List.)

Other circuits that have addressed the issue of malpractice claims by soldiers against military doctors have, since *Johnson,* reached identical conclusions. *See, e.g., Loughney v. United States,* 839 F.2d 186 (CA3 1988) (dismissing malpractice action by guardian of National Guard sergeant who went into a coma after surgery performed by Army physician); *Sidley v. U.S. Dept. of Navy,* 861 F.2d 988 (CA6 1988) (dismissing malpractice claim for negligent treatment related to off-base injuries); *Atkinson v. United States,* 825 F.2d 202 (CA9 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988) (affirming dismissal of prenatal malpractice claim by servicewoman); *Madsen v. United States,* 841 F.2d 1011 (CA10 1987) (malpractice claims of Air Force Captain on terminal leave pending retirement dismissed because "injury to active duty service members as a result of military medical care has been regarded as incident to service"); and *Del Rio v. United States,* 833 F.2d 282 (CA11 1987) ("Ms. Del Rio's active military status permitted her to seek prenatal care at the military hospital. The medical treatment administered to Ms. Del Rio therefore was incident to her military service."). These cases demonstrate that medical treatment at military facilities is "incident to service" and therefore malpractice claims like Appelhans' are barred by the *Feres* doctrine. The Sixth Circuit, relying on *Johnson,* has even gone so far as to state that "in recent years the [Supreme] Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military." *Major v. United States,* 835 F.2d 641 (CA6 1987), *cert denied,* — U.S. —, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988) (emphasis in original).

Appelhans nonetheless argues that once he was placed on excess leave his connection to the Army became remote and minimal. So tenuous was his connection with the Army pending his formal discharge, he claims, that his case should be distinguished from the general rule that considers medical treatment to be incident to service. It is certainly true that during excess leave, a soldier loses many of the benefits provided to service personnel and the military relinquishes much of its control over the soldier. During a period of excess leave servicemen are not entitled to pay or allowances and will not accrue leave. 10 U.S.C. §§ 701(a), 706(b)(2). Servicemen on excess leave, unlike other active duty personnel, may also pursue and hold civilian employment. 10 U.S.C. § 706(c)(2). They may also travel freely within the United States so long as they keep the military informed of their whereabouts. Several significant ties to the military, however, remain intact. Time spent on excess leave still counts as active duty time. 10 U.S.C. § 701(e). Accordingly, excess leave personnel can obtain free health care at military facilities, retain both post exchange and commissary privileges, and remain subject to the Uniform Code of Military Justice. Finally, excess leave can be canceled at any time and a soldier ordered back to duty. *See* Army Reg. 630–5, Para. 54(e).

Appelhans' argument draws some support from two Fifth Circuit decisions. In *Adams v. United States,* 728 F.2d 736 (CA5 1984), the court held the *Feres* doctrine inapplicable to malpractice related injuries sustained by a serviceman on excess leave pending appellate review of his bad conduct discharge. The serviceman in that case, Robert Oatis, died on the operating table of a heart attack after a circumcision. Unlike Appelhans, though, the Army notified Oatis that he had been discharged almost one year prior to his surgery. Oatis' circumcision was performed free of charge at a Public Health Service hospital because he had failed, as was formally required to complete the discharge process, to report to his post for separation process-

ing and to return his military I.D. More recently, in *Cortez v. United States*, 854 F.2d 723 (CA5 1988), the court relied on *Adams* in allowing a negligence claim brought by the widow of a serviceman who committed suicide while on the Army's Temporary Disability Retirement List. Roberto Cortez, left unattended in his eighth floor room, jumped to his death after being admitted to William Beaumont Army Medical Center because of another suicide attempt earlier that day. Unaware of his death, the Army discharged Cortez later that same day for permanent mental disabilities.

We think these decisions are distinguishable on their facts because in each case only unique circumstances of formality or timing separated the soldiers from civilian status. *Cf. Kendrick v. United States, supra.* Even if Appelhans' situation was not factually distinct, in *Johnson*'s wake, we would hesitate to find medical treatment of servicemen on excess leave to be other than incident to service.

### III.

The *Feres* doctrine is not without critics. Four Justices of the Supreme Court agree that *"Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism' it has received." *Johnson*, 481 U.S. at 700, 107 S.Ct. at 2074 (Scalia, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.) (quoting *In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 1242, 1246 (E.D.N.Y. 1984)). However, the fact that the doctrine may in many cases lead to undeniably harsh results does not relieve this court of its obligation to apply precedent. The decision of the trial court is therefore

AFFIRMED.