**Gary W. KENDRICK; Shane Kendrick, a minor child, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee. (Two Cases)**

Nos. 88–1350, 88–3891.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1989.

Decided June 16, 1989.

Rehearing and Rehearing In Banc Denied July 26, 1989.

Russell H. Putnam, Jr. (William Frederick Austin, P.A., Columbia, S.C., Chuck Richard Pardue, Kilpatrick & Pardue, Augusta, Ga., on brief), for plaintiffs-appellants.

Raymond Emery Clark, Asst. U.S. Atty., Columbia, S.C., (Vinton D. Lide, U.S. Atty. on brief), for defendant-appellee.

Before CHAPMAN and WILKINSON, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

CHAPMAN, Circuit Judge:

This case presents the question of whether the doctrine established in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bars an action brought under the Federal Tort Claims Act by an individual on the Army's Temporary Disability Retired List alleging medical malpractice. The appellant alleges that attending military physicians negligently continued to prescribe Dilantin, a potentially toxic drug, for a seizure disorder without adequately monitoring the level of such medication in his blood. A toxic level of Dilantin, the appellant contends, was the proximate cause of permanent brain damage. The district court held that the claim was barred under *Feres* and granted the government's motion for summary judgment. We affirm.

## I.

This is a medical malpractice and loss of consortium case brought, pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, by the plaintiff and his minor son. After their administrative claim was denied by the United States Army Claims Service, the appellants/plaintiffs, Gary Kendrick ("Kendrick") and his son Shane Kendrick, filed suit in the United States District Court for the District of South Carolina in December 1987. This appeal is taken from the district court's granting of defendant's summary judgment motion upon finding that the action was barred because the alleged medical malpractice arose "out of or ... in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159.

On March 12, 1985, Kendrick, a sergeant on active duty in the United States Army, was injured in a motor vehicle accident. He was treated at Bassett Army Community Hospital, Fort Wainwright, Alaska, for a possible seizure disorder which was thought to have contributed to the accident. Attending military physicians prescribed Dilantin (100 milligrams three times per day) to control the seizure episodes. Kendrick continued Dilantin treatment until November 1985.

A Physical Evaluation Board considered Kendrick's medical condition in May 1985, and recommended that he be placed on the Army's Temporary Disability Retired List ("TDRL") because he was physically unfit for duty. On July 31, 1985, because of his continuing health problems Kendrick was placed on the TDRL, pursuant to 10 U.S.C. § 1202. In September 1985, Kendrick alleges he began to experience memory loss, difficulty in walking, and other symptoms consistent with Dilantin toxicity. In early November 1985, Kendrick was medically evaluated at Moncrief Army Hospital, Fort Jackson, South Carolina. He continued to receive Dilantin treatment at the prescribed dosage until November 6, 1985. On November 27, 1985, he was referred to Don C. Abbott, M.D., who diagnosed temporary trunkal cerebellar ataxia probably secondary to Dilantin toxicity. Subsequent

evaluations in March 1986 and February 1987 showed continued cerebellar dysfunction. In March 1987, Kendrick was evaluated by an informal Physical Evaluation Board at Fort Gordon, Georgia, and following formal review in April 1987, he was given permanent retirement status on June 5, 1987, with a fifty percent disability rating. The permanent disability rating took into account the probable relation between Kendrick's cerebellar disturbance and the Dilantin toxicity.

Kendrick's complaint alleges that various military physicians negligently continued to prescribe Dilantin without adequately monitoring the level of medication in his blood. Kendrick further avers that this failure to monitor the level of Dilantin led to a dangerous state of toxicity, resulting in permanent brain damage. According to Kendrick, the alleged acts of medical malpractice occurred between August 1, 1985, when he contends symptoms of toxicity were first noticed, and November 1985, when he discontinued taking Dilantin. During this time he was on TDRL status. The government contends that the alleged unmonitored overdose of Dilantin and resultant toxicity began with medical treatment provided while Kendrick was on active duty, and the same course of treatment continued while he was in a TDRL status, and it therefore arises out of activity incident to service.

## II.

The government's motion to dismiss this action pursuant to Rule 12(b)(1) or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure was based on the ground that plaintiff's claim is barred by the *Feres* doctrine. *Feres* and its progeny hold that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. Since its inception, the *Feres* doctrine has been broadly and persuasively applied by federal courts and has now stood for nearly four decades without either legislative or

significant judicial alteration. Indeed, the Supreme Court has consistently reaffirmed the *Feres* doctrine. *See, e.g., United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987); *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

It is well established that receipt of medical care in military facilities by members of the military on active duty is "activity incident to service" and thus a lawsuit against the United States arising from medical treatment of a service member on active duty is barred under *Feres. Rayner v. United States,* 760 F.2d 1217 (11th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); *Buckingham v. United States,* 394 F.2d 483 (4th Cir.1968). The government maintains that the alleged unmonitored overdose of Dilantin began with medical treatment Kendrick was provided while on active duty, and the same course of treatment was continued after he was placed on the TDRL and was incident to his military service and thus barred by *Feres.*

Kendrick contends that when placed on the Army's TDRL he was "discharged, separated and retired" from active duty and relieved of military obligations, and any negligent treatment received while on TDRL was not "incident to service" nor barred by *Feres.* According to Kendrick, the injury occurred because of the failure to monitor while he was on the Army's TDRL and therefore should be considered separate and distinct from his initial injury and treatment.

The Temporary Disability Retired List was established under the authority of 10 U.S.C. § 1202 and implemented pursuant to Chapter 7 of Army Regulation 635–40. TDRL status provides both the disabled service member and military authorities a season in which to assess the service member's physical condition and determine whether he should be retired from the military as a result of a physical disability. If permanent retirement is eventually required, the TDRL gives all concerned the time necessary for an accurate assessment of the appropriate percent of disability retirement pay to be extended to the injured service member.

Kendrick relies on *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), and *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), for the proposition that a service member, who is not on active duty nor subject to military control at the time of the injury, is not barred by *Feres* from bringing an FTCA suit against the government. A service member on the TDRL, Kendrick argues, is retired from active duty and sufficiently free from military control to avoid the *Feres* bar. In *Brooks,*[1] *supra,* the Supreme Court permitted a soldier injured while on furlough to pursue a claim against the government under the FTCA. At the time of injury, the *Feres* court observed, Brooks was "under compulsion of no orders or duty and on no military mission." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. In *Brown, supra,* the Supreme Court held that *Feres* did not bar a suit brought by a veteran for medical malpractice against the United States for an injury he suffered in a Veterans Administration hospital as a result of treatment of his service-connected disability seven years after his discharge from the service.

We are unpersuaded that these two cases govern the case at bar. First, the focus of *Feres* is not upon when the injury occurs or when the claim becomes actionable, rather it is concerned with when and under what circumstances the negligent act occurs. *Henning v. United States,* 446 F.2d 774, 777 (3rd Cir.1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972), *citing Brown,* 348 U.S. at 113, 75 S.Ct. at 143. The alleged negligent act of prescribing Dilantin without monitoring the patient's blood level commenced while Kendrick was on active duty under the care of military physicians. All of Kendrick's medical treatment arose out of an activity incident to service. Second, the Court in

1. *Brooks* was decided before *Feres* but was expressly left intact by the *Feres* Court.

*Brown* placed great emphasis on Brown's "civilian status" as one of the distinguishing features between his claim and that of the plaintiffs in *Feres*. Unlike Brown, Kendrick was not a civilian when the alleged negligent act occurred, and he has remained subject to military discipline throughout his continuing course of medical treatment.[2]

The Supreme Court has emphasized three broad rationales underlying the *Feres* doctrine: (1) the distinctly federal nature of the relationship between the government and members of the armed forces, (2) the availability of existing alternative compensation schemes in the military, and (3) the fear of damaging military structure and discipline. *See Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–73, 97 S.Ct. 2054, 2057–59, 52 L.Ed.2d 665 (1977).

The district court's finding of a *Feres* bar to Kendrick's claim is consistent with the three rationales underlying the *Feres* doctrine. First, the Supreme Court recognized the relationship existing between the United States and its military personnel as one "distinctly federal in character," and that application of local tort law to that relationship pursuant to the FTCA would be inappropriate. *Feres*, 340 U.S. at 143, 71 S.Ct. at 158, *quoting United States v. Standard Oil Co.*, 332 U.S. 301, 305, 67 S.Ct. 1604, 1607, 91 L.Ed. 2067 (1947). Where a service member is injured incident to service it "makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to a service-man." *Stencel*, 431 U.S. at 672, 97 S.Ct. at 2058. Instead, application of the underlying federal remedy that provides "simple, certain, and uniform compensation for injuries or death of those in armed services" is appropriate. *Feres*, 340 U.S. at 144, 71 S.Ct. at 158.

Second, the *Feres* doctrine operates in conjunction with an existing compensation plan available to members of the Armed Forces which makes a good faith attempt to handle service-related injuries in a generous and fair manner. Kendrick has already benefited and will continue to benefit from the statutory "no-fault" compensation scheme offered by the military under the Veterans' Benefits Act, 38 U.S.C. § 301 *et seq.*, and to permit this FTCA suit to go forward will undermine the specific compensation scheme established by Congress. In *Feres*, the Court observed that the primary purpose of the FTCA "was to extend a remedy to those who had been without; if it incidentally benefited those already well provided for, it appears to have been unintentional." *Feres*, 340 U.S. at 140, 71 S.Ct. at 156. Those injured during the course of service-related activity receive benefits that "compare extremely favorably with those provided by most workmen's compensation statutes." *Id.* at 145, 71 S.Ct. at 159. Moreover, recovery of benefits is "swift [and] efficient," *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059, "normally requir[ing] no litigation," *Feres*, 340 U.S. at 145, 71 S.Ct. at 159. It was difficult for the *Feres* Court to believe that Congress

---

2. We are similarly unpersuaded by appellant's reliance on *Cortez v. United States*, 854 F.2d 723 (5th Cir.1988). The Fifth Circuit, reversing the district court, held that the death of a service member on the TDRL was not incident to service so as to preclude a FTCA claim. The decedent in *Cortez* had been placed on the TDRL because of severe mental disorders. During the next year he was hospitalized on several occasions for psychotic episodes and suicide attempts. While on the TDRL, Cortez lacerated his arms and wrists in an apparent suicide attempt. Because of a military identity card found on his person he was taken to an Army hospital for emergency care. Left unattended in a room on the eighth floor, Cortez jumped to his death. The plaintiffs claimed that military medical personnel failed to supervise the decedent properly following his admission to the hospital. The Fifth Circuit found that Cortez, at the time of his death, was receiving disability pay and was eligible for treatment in a government hospital. Neither benefit was found sufficient to warrant a *Feres* bar. While the court held that an individual on the TDRL, under certain circumstances, could bring a FTCA action, Cortez's case can be distinguished from the case at bar. Cortez's suicide while in a military hospital was found to be an isolated act independent of any service-connected injury. Kendrick's claim, in contrast, arose out of a continuous course of medical treatment commenced while he was on active duty.

We do not hold that the *Feres* doctrine bars an action based upon a truly independent or post-service tort. This is not such a case.

would have provided such a comprehensive system of benefits while at the same time contemplating recovery for service related injuries under the FTCA. *United States v. Johnson,* 481 U.S. 681, 689, 107 S.Ct. 2063, 2072, 95 L.Ed.2d 648, 658 (1987). Particularly persuasive was the fact that Congress "omitted any provision to adjust these two types of remedy to each other." *Feres,* 340 U.S. at 144, 71 S.Ct. at 158. As the Court concluded in *Stencel,* there is no reason to modify what the Court has previously held to be the law: the statutory veterans' benefits "provid[e] an upper limit of liability for the Government as to service-connected injuries." *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059. *See also Hatzlachh Supply Co., Inc. v. United States,* 444 U.S. 460, 464, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980) (per curiam) ("the Veterans' Benefits Act provided compensation to injured servicemen, which we understood Congress intended to be the sole remedy for service-connected injuries"). In the light of the military's "no-fault" compensation scheme and the fact that Kendrick's disability award under that plan took into account the severity of the disability resulting from Dilantin toxicity, to permit Kendrick to proceed with this medical malpractice suit would be tantamount to double recovery and would undermine the fiscal and administrative integrity of the military's disability compensation program.

Third, and finally, tort actions brought by service members against the government for injuries incident to service are barred because they are the *"type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer,* 473 U.S. at 59, 105 S.Ct. at 3043. A tort suit based upon service-related injuries necessarily implicates military judgments and decisions integral to the execution of the military mission. Moreover, military discipline involves not only obedience to orders, but also duty and loyalty to one's service and to one's country. Suits brought by service members against the military for "service-related injuries could undermine the commitment essential to effective service and

thus have the potential to disrupt military discipline in the broadest sense of the word." *United States v. Johnson,* 481 U.S. at 691, 107 S.Ct. at 2069, 95 L.Ed.2d at 658–59. *See also Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In construing the *Feres* doctrine broadly, the Ninth Circuit similarly found that if *Feres* were overruled nearly every potential tort case "would have to be litigated and it is the suit, not the recovery, that would be disruptive of discipline and the orderly conduct of military affairs." *Henninger v. United States,* 473 F.2d 814, 815–16 (9th Cir.1973). Clearly, to allow a service member on TDRL to maintain a tort action against the military would have a disruptive effect on military discipline, obedience and commitment, especially if the service member is later returned to active duty.

■■■ Of the three cases decided *sub nom, Feres v. United States,* two alleged medical malpractice at Army hospitals. An active duty service member injured while receiving medical treatment at a military facility is generally deemed to be injured incident to military service. *Rayner v. United States,* 760 F.2d 1217 (11th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); *Buckingham v. United States,* 394 F.2d 483 (4th Cir.1968); *Harten v. Coons,* 502 F.2d 1363 (10th Cir.1974); *Shults v. United States,* 421 F.2d 170 (5th Cir.1969). The statutory language establishing the TDRL reflects a congressional intent that personnel on the list are still members of the Armed Forces. Thus, the fact that Kendrick only complains of injuries after being placed on TDRL is not determinative of the "incident to service" issue. Kendrick was not discharged from his military duties; he remained subject to military law and discipline. 10 U.S.C. § 802. He was required by statute to submit to periodic physical examinations by military physicians. 10 U.S.C. § 1210(a). Furthermore, he was subject to return to active duty pending the outcome of his TDRL physical examination. 10 U.S.C. § 1211. *See also* 10 U.S.C. § 1376(b) ("The Secretary concerned shall maintain a tem-

porary disability retired list containing the names of members of the armed forces under his jurisdiction placed thereon...."). The Fifth Circuit observed in an analogous case that another factor relevant to the "incident to service" finding is that plaintiff "could not have been admitted, and would not have been admitted, to the Naval Hospital except for his military status." *Shults*, 421 F.2d at 171. The *Shults* court continued: "It inescapably follows that whatever happened to him [the service member] in that hospital and during the course of that treatment had to be 'in the course of activity incident to service.'" *Id.* at 172. *See also Rayner*, 760 F.2d at 1219. All these factors lead to the conclusion that Kendrick is barred by *Feres* in bringing this suit because the injury alleged occurred "in the course of activity incident to service."

A further case supporting this conclusion is *Laswell v. Brown*, 683 F.2d 261 (8th Cir.1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). The family of a deceased service member initiated a suit against the United States, alleging negligence in failing to treat radiation exposure after the serviceman's discharge from active duty. The decedent had been on military duty in the South Pacific after World War II when the government was testing nuclear weapons. In denying the post-discharge negligence claim, the court held that the plaintiff's allegations constituted continuations of the same tort since the original wrongful act occurred while plaintiff was clearly on active duty, therefore meeting the "incident to service" test of *Feres*. *Laswell*, 683 F.2d at 267. *See also Ricks v. United States*, 842 F.2d 300 (11th Cir.), *cert denied* — U.S. —, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1988) (*Feres* barred suit against the government brought by service member who had not been discharged from the military or placed on permanent disability retired list and who maintained an ongoing relationship with the Army and was taking full advantage of medical treatment in a military hospital to which he would not have been admitted absent his military status); *Anderson v. United States*, 575 F.Supp. 470 (E.D.Mo.

1983) (complaints in a FTCA suit brought by a service member on the TDRL constituted a continuous tort since the original wrongful act occurred while plaintiff was on active duty, thus the suit barred by *Feres*). Similarly, in the case at bar the same medical treatment commenced by Army doctors while Kendrick was on active duty was continued during the period he was on the TDRL. As the district court in *Anderson* declared, the plaintiff's claim for negligent treatment only after the date he was placed on TDRL can only be viewed as a skillful reformulation of a complaint for in-service negligence. *Anderson*, 575 F.Supp. at 473.

The judiciary has long recognized that the military has broad discretion to alter the military status of its personnel, and it would be anomalous to make the Army suddenly liable to Kendrick for exercising its discretion to place him on the TDRL. It is undisputed that any claim that Kendrick had prior to being placed on the TDRL was barred by *Feres*. The cause of action under Kendrick's own analysis only became viable when the Army took the voluntary administrative action of placing him on the TDRL. The very rationale behind *Feres*, especially the preservation of government authority and discipline, would be undermined if Kendrick were permitted to maintain an action—only after the Army voluntarily changed his status—for medical treatment commenced while he was on active duty and continued during the period he was on the TDRL. A judgment for appellant would have a chilling effect on the exercise of the military's prerogative to make decisions regarding the placement of service members on the TDRL. Moreover, judgment for appellant would adversely interfere with the operation of the military's application of its medical expertise to the disability review system and would inhibit the free flow of information in its no-fault compensation scheme.

### III.

The loss of consortium claim asserted by Kendrick's son, Shane Kendrick, is similarly barred by the *Feres* doctrine.

The limits imposed by *Feres* are equally applicable when the claims of a family member are derivative to the service member's cause of action under the applicable state law. *De Font v. United States,* 453 F.2d 1239 (1st Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972). "It is well established that *Feres* bars recovery by family members where the cause of action is ancillary or derivative to the serviceman's action for his own injury received incident to military service." *Lombard v. United States,* 690 F.2d 215, 223 (D.C.Cir.1982); *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983).

There was no dispute as to any material fact and the defendant was entitled to summary judgment as a matter of law.

AFFIRMED.