Arlene A. JOHNSON, Plaintiff,

v.

The UNITED STATES, Defendant.

Civ. A. No. 89–2633.

United States District Court,
District of Columbia.

April 12, 1990.

Irving Starr, Arlington, Va., for plaintiff.

Sharon Cohen, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

### I. *Introduction*

Plaintiff Arlene A. Johnson brings this action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988) ("FTCA"), alleging that Army physicians and medical personnel negligently misadvised her for almost four months that she had AIDS, which resulted in her having an unnecessary and unwanted abortion. The United States has moved to dismiss on the ground that this action is barred by the *Feres* doctrine, which prohibits service members from recovering for injuries sustained "incident to service" as a result of negligent conduct on the part of government personnel. *See United States v. Johnson,* 481 U.S. 681, 686, 107 S.Ct. 2063, 2066, 95 L.Ed.2d 648 (1987); *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The motion has been fully briefed by the parties.[1] For the purposes of deciding it, we assume that all of plaintiff's factual allegations are true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Shear v. National Rifle Association of America,* 606 F.2d 1251, 1253 (D.C.Cir.1979); *Smith v.*

---

**1.** Although the United States asserts that we lack subject matter jurisdiction, Rule 12(b)(1), Fed.R. Civ.P., plaintiff may well have stated a claim under federal law. Since the United States essentially challenges the validity of this claim, dismissal at the present time turns on whether plaintiff has stated a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). *See*

*Wheeldin v. Wheeler,* 373 U.S. 647, 649, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963); *see also Feres,* 340 U.S. at 140–41, 71 S.Ct. at 156–57 (The FTCA confers jurisdiction where the United States "was immune from suit before; it remains for courts, in exercise of their jurisdiction, to determine whether any claim is recognizable in law.").

*Hurd*, 699 F.Supp. 1433, 1435 (D.Haw. 1988).

## II. *Background*

At all relevant times, plaintiff was on active duty as a member of the United States Army at the Walter Reed Army Medical Center ("Walter Reed"). On or about September 9, 1986, plaintiff donated blood to a public blood drive sponsored by Walter Reed. At that time, she was informed that her blood would be subjected to routine screening for the AIDS virus.[2] Plaintiff was under no military orders or compulsion to donate blood at Walter Reed, and the blood drive was open to the public.

On or about October 8, 1986, Walter Reed doctors and other hospital personnel informed plaintiff that she had tested positive for AIDS. On that same day, Walter Reed personnel drew a second blood sample from plaintiff for the purpose of conducting followup ELISA and Western Blot tests.[3] Walter Reed personnel continued to advise plaintiff that she had AIDS until February 3, 1987, at which time she was told by a Walter Reed doctor that there had been a "mistake," that she "did not have AIDS," and that there had been an "error" in the "paperwork."[4]

In November 1986, prior to being notified of this error, plaintiff discovered that she was pregnant. On November 21, 1986, doctors at Walter Reed advised plaintiff that her child would most certainly be born with AIDS and would not live beyond five years. The doctors indicated that under these circumstances it would be better for plaintiff to have an abortion than to carry the child to term. As a result of this counseling, and for no other reason, plaintiff had an abortion on December 4, 1986. Two months later, plaintiff was informed by Walter Reed that there had been an "error" in the "paperwork" and that she did not have AIDS.

2. The screening was performed by an outside civilian laboratory.

3. These tests are typically used to confirm an initial HIV-positive result.

4. The doctor apparently discovered the error after further blood samples were drawn on January 29, 1987.

None of plaintiff's blood tests showed a positive AIDS result. In fact, the ELISA and Western Blot tests showed negative results. Thus, Walter Reed personnel never had any medical basis for advising plaintiff that she had AIDS.

Plaintiff, on October 5, 1988, submitted a claim for $750,000 to the Commanding General at Walter Reed. Her claim was rejected in a letter postmarked March 24, 1989. Plaintiff subsequently brought this action under the FTCA alleging that, because of the negligence of Walter Reed employees, she suffered an unnecessary and unwanted abortion, an unjustified invasion of privacy, and physical and mental pain, including serious and lasting harm to her psychological well-being. Plaintiff is not eligible for compensation for these injuries under any other statutory or administrative scheme.[5]

## III. *Discussion*

■ Under the *Feres* doctrine, the United States is not liable to service members under the FTCA for injuries that "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159; *see also Johnson*, 481 U.S. at 686, 107 S.Ct. at 2066; *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985). Three broad rationales underlie this doctrine. First, because of the federal relationship between the government and members of its armed forces, an "underlying federal remedy that provides 'simple, certain, and uniform compensation for injuries' " should be applied. *Johnson*, 481 U.S. at 689, 107 S.Ct. at 2068 (quoting *Feres*, 340 U.S. at 144, 71 S.Ct. at 158). A second and independent rationale is the existence of generous statutory disability and death benefits for service-related injuries. *Id.* (footnote omitted). Third, suits brought by service members against the United States for injuries suffered "in-

5. Peacetime compensation schemes for service members require that the injury result in disability or death. *See* 38 U.S.C. §§ 331–351 (1988).

cident to service" are the types "of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer,* 473 U.S. at 59, 105 S.Ct. at 3043. Whether a particular injury arose out of "an activity incident to service" typically depends on the extent to which these rationales are implicated. *See Appelhans v. United States,* 877 F.2d 309, 311 (4th Cir.1989).

■ Plaintiff argues that her voluntary donation of blood at the blood drive was not "incident to service." For several reasons, we agree. First, when plaintiff charitably donated blood on September 9, 1986, she was "under compulsion of no orders or duty and on no military mission." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159; *cf. Valdiviez v. United States,* 884 F.2d 196, 198–99 (5th Cir.1989) (donating blood during a military sponsored drive was not within the scope of a serviceman's employment). *Compare Johnson,* 481 U.S. at 691, 107 S.Ct. at 2069 (decedent was killed while performing a rescue mission on the high seas, a primary duty of the Coast Guard of which he was a member). Second, the blood drive was open to the public, not a purely military event.[6] The opportunity to donate blood did not turn on plaintiff's active military status; had plaintiff been a civilian, she could and would have made precisely the same contribution of blood. *Compare Del Rio v. United States,* 833 F.2d 282, 286 (11th Cir.1987) (as a benefit incident to active military service, plaintiff was eligible for prenatal care at a military hospital). Plaintiff's opportunity to contribute blood was not a benefit incident to active military service. Third, although the *Feres* doctrine prohibits recovery for medical malpractice suffered "incident to service," *see Feres,* 340 U.S. 135, 71 S.Ct. 153 (barring two medical malpractice claims); *Appelhans,* 877 F.2d at 311–312 (Most courts "have held that medical treatment at military facilities is 'incident to service.'") (citations omitted),[7] it does not extend to the initial screening of plaintiff's blood at a military sponsored blood drive open to the public. Walter Reed's policy was to screen the blood of all donors, service members and civilians alike. The primary function of this screening is to protect potential donees from contaminated blood, not to provide an occasion for medical advice to donors concerning their own health.[8] Under these circumstances, the initial screening of plaintiff's blood and any resultant "error" in the "paperwork" cannot be considered medical treatment received as a benefit "incident to service." Fourth and finally, plaintiff is not eligible for alternative compensation for her injuries under any other statutory or administrative scheme.[9]

The United States places undue weight on *Shearer,* 473 U.S. 52, 105 S.Ct. 3039, in which the Supreme Court barred an FTCA claim based on the death of a service member who, while off duty and off the base, was kidnapped and murdered by another private. *Shearer* rested primarily on the third rationale behind *Feres,* that civilian courts should not "second-guess military decisions" where impairment of "essential military discipline" might result. *Shearer,* 473 U.S. at 57, 105 S.Ct. at 3042 (citations omitted). The plaintiff in that case alleged that commanding officers had failed to ex-

---

6. At this point in time, plaintiff's status in our opinion was no different from that of a civilian walking into Walter Reed from off the street.

7. This rule applies even when the medical condition for which treatment is sought was not caused by the service member's military status. *See, e.g., Irvin v. United States,* 845 F.2d 126 (6th Cir.) (prenatal care), *cert. denied,* — U.S. —, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988); *Del Rio,* 833 F.2d at 286 (prenatal care).

8. If the incorrect advice had been given to plaintiff during a routine, annual physical examination, her suit for medical malpractice would appear to be barred under the *Feres* doctrine. *See Feres,* 340 U.S. 135, 71 S.Ct. 153 (barring two medical malpractice claims); *Appelhans,* 877 F.2d at 311–312 (Most courts "have held that medical treatment at military facilities is 'incident to service.'") (citations omitted).

9. *See supra* note 5. While *Shearer,* a 1985 case, indicated that this factor "no longer controll[ed]" in determining whether an action was barred, 473 U.S. at 58 n. 4, 105 S.Ct. at 3043 n. 4, the Supreme Court subsequently reaffirmed the importance of all three rationales underlying the *Feres* doctrine. *See Johnson,* 481 U.S. at 688–91, 107 S.Ct. at 2068–69.

ercise reasonable control over the private who kidnapped and murdered the decedent. The Supreme Court found that the claim "call[ed] into question basic choices about the discipline, supervision, and control of" the serviceman responsible for the tort. *Id.* at 58, 105 S.Ct. at 3043.

Such choices are not called into question in this case. Plaintiff's allegations concern a simple "error" in the "paperwork," not "complex, subtle, and professional decisions as to the composition, training, ... and control of a military force." *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973) (*quoted in Shearer*, 473 U.S. at 58, 105 S.Ct. at 3043). It is difficult to imagine how this lawsuit would involve us "in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3043. Rather, this case is more akin to *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), in which the injuries complained of, and deemed cognizable by the Supreme Court, were caused by the negligent driver of a military truck. *See Shearer*, 473 U.S. at 58, 105 S.Ct. at 3043; *see also Atkinson v. United States*, 825 F.2d 202, 205–06 (9th Cir.1987) (medical malpractice case arising from prenatal care, while barred by first and second *Feres* rationales, did not involve the military discipline rationale, since prenatal care is not distinctly military in character), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988).

## IV. *Conclusion*

Courts, which have considerable discretion in handling motions to dismiss, ordinarily grant them sparingly so as to ensure that plaintiffs are not improperly denied an adjudication on the merits. C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1349 at 541 (1969). Rule 12(b)(6) motions[10] are especially disfavored and are rarely granted. *Id.* § 1357 at 598; *see Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232 (dismissal warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations") (citing *Conley v. Gibson*,

355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *First Financial Savings Bank v. American Bankers Insurance Co.*, 699 F.Supp. 1158, 1161 (E.D.N.C. 1988) ("granted only in the unusual case in which" plaintiff's allegations "show on the face of the complaint that there is some insuperable bar to relief"). This principle has even greater force when, as here, the asserted theory of liability is a novel one. *See Electrical Construction & Maintenance Co. v. Maeda Pacific Corp.*, 764 F.2d 619, 623 (9th Cir.1985) (quoting C. Wright & A. Miller, *supra*, § 1357 at 603).

In light of these standards and our discussion in the preceding section, the motion to dismiss must be denied. For reasons previously stated, we hold that the original donation of blood was not "incident to service," and any liability arising therefrom is not barred by the *Feres* doctrine. We cannot say with certainty that plaintiff can prove no set of facts that will entitle her to relief. That is all that is required at this juncture for her complaint to survive the present motion. Plaintiff's ultimate right to recover, however, depends on her ability to establish that the proximate cause of her injuries was some foreseeable negligent act or omission attributable to the United States at the initial blood screening stage. Plaintiff has a heavy burden. This is because the correct medical advice she subsequently received was "incident to service," and any claim for damages arising therefrom thus falls squarely within the *Feres* doctrine. *See Feres*, 340 U.S. 135, 71 S.Ct. 153 (barring two medical malpractice claims); *Appelhans*, 877 F.2d at 311–312 ("The majority of decisions in this and other circuits, especially since *Johnson*, have held that medical treatment at military facilities is 'incident to service.'") (citations omitted).

An Order consistent with the foregoing has been entered this day.

---

**10.** *See supra* note 1, where we explain why the United States' motion is based on Rule 12(b)(6) rather than Rule 12(b)(1).