946 F.2d 886
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William T. MURPHY, Plaintiff-Appellant,
v.
Philip C. MARCUM; Sheila F. O'Connor; Dean Rueckert;
Daniel M. Baughman, Defendants-Appellees.
 No. 90-2237.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1991.
Decided Oct. 18, 1991.
As Amended Dec. 9, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-89-2528-JFM)
 Argued: John H. Morris, Jr., Venable, Baetjer & Howard, Baltimore, Md., for appellant; Major Raymond J. Jennings, Jr., Office of the Judge Advocate General, Department of the Army, Washington, D.C., for appellee.
 On Brief: Lt. Col. Mark A. Steinbeck, Office of the Judge Advocate General, Department of the Army, Washington, D.C., Breckinridge L. Willcox, United States Attorney, Carmina S. Hughes, Assistant United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, K.K. HALL, Circuit Judge, and RICHARD B. KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from the action of the district court in dismissing the complaint of appellant, William T. Murphy, a sergeant in the United States Army, filed against four of his superior officers. Appellant's complaint asserts a state law claim of defamation and two constitutional tort claims under the rationale of Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). The district court determined that the acts complained of were "incident to military service" and barred by the Feres doctrine. Agreeing with the district court, we affirm.
 
 
 2
 At the time of the happening of the events in question, Sergeant William T. Murphy (Murphy) was assigned to the 11th Military Intelligence Company, Army Intelligence and Security Command, Aberdeen Proving Ground, Maryland. As a part of his duties, he participated in the collection and dissemination of combat strategy and military intelligence. He held a top secret security clearance. Captain Sheila F. O'Connor was, until about August 16, 1988, his commanding officer. She was, on the date last mentioned, succeeded by Captain Daniel M. Baughman. Major Dean Rueckert was Chief of Mental Health Services at Aberdeen and Lt. Col. Philip C. Marcum was the Group Commander. The amended complaint filed herein alleged that about May 1988, Murphy learned Captain O'Connor had telephoned the mother of Private Unkenholt (a white female) concerning Unkenholt's plans to marry an African-American man. Unkenholt showed Murphy a statement from her mother relative to the telephone call setting out O'Connor's reservations about the interracial marriage. Thereupon Murphy drafted a petition condemning O'Connor's telephone call which he planned to circulate among the troops and submit to the Equal Opportunities Officer. Some forty soldiers committed themselves to sign the petition. Upon learning of the proposed petition, Group Sergeant Major Chester Leeth called a meeting of the non-commissioned officers and threatened to bring mutiny charges against anyone who signed the petition. Shortly thereafter, Lt. Col. Marcum initiated an investigation. Following completion of the investigation, on or about August 3, 1988, Marcum reprimanded Murphy for making false charges of racism against O'Connor. Lt. Col. Marcum stated that absent further problems, the reprimand would conclude the matter. Thereafter, about August 16th, Murphy went on leave. Sometime before August, Murphy had initiated an Inspector General investigation and an inquiry by Senator Sarbanes regarding a separate and unrelated matter in Lt. Col. Marcum's chain of command. While Murphy was on leave, Marcum learned of these inquiries and assisted the Army in preparing its response. Marcum was irritated by Murphy's efforts to petition authorities outside of his command and resolved to kick Murphy out of the Army.
 
 
 3
 When Murphy returned to duty on September 6, he learned Marcum had imposed severe sanctions upon him. On that day, Marcum relieved Murphy from his assignment, suspended his security clearance and halted all favorable action on Murphy. He advised Murphy he was recommending revocation of Murphy's security clearance and would bar him from re-enlisting. The complaint further alleges that Marcum had O'Connor and Baughman draft a false document stating that Murphy needed a psychiatric examination; that following a short interview, Rueckert reached the unfounded conclusion that Murphy suffered from "passive aggressive traits," and sent this report to Army authorities for consideration on Murphy's security clearance; that Marcum then inserted false and damaging reports in Murphy's file, and arranged for Murphy to be transferred to Korea; that when Murphy inquired about the status of his security clearance, he was given the choice of going to Korea, without resolution of his security clearance, or resigning; and that rather than stay in the Army without his security clearance, he resigned. Plaintiff seeks compensatory and punitive damages.
 
 
 4
 Defendants moved to substitute the United States as the party defendant, and to dismiss the complaint for failure to state a cause of action. The basis of the motion was the assertion that the claim for defamation was expressly exceptive from the FTCA, and all such claims were barred as incident to plaintiff's military service.
 
 
 5
 Accepting as true allegations of the amended complaint for the purpose of defendant's motion, the court substituted the United States as the party defendant, and granted the motion to dismiss, holding that neither the claim for defamation or the alleged constitutional tort claims were legally cognizable in this action. The allegations make clear and the trial court found that Murphy was on active duty at the time of the commission of such acts.
 
 
 6
 As determined in Feres v. United States, 340 U.S. 135, 146 (1950), the United States is not liable under the Federal Tort Claims Act or for constitutional tort for injury to service personnel where the injuries arise out of or are in the course of activity incident to service. This principle has been restated and affirmed numerous times by the Supreme Court. Chappell v. Wallace, 462 U.S. 296, 305 (1983); United States v. Johnson, 481 U.S. 681, 686 (1987); United States v. Stanley, 483 U.S. 669, 683-684 (1980), and the Fourth Circuit, see Kendrick v. United States, 877 F.2d 1201 (4th Cir.1989), cert. dismissed, 110 S.Ct. 1104 (1990); Appelhans v. United States, 877 F.2d 309 (4th Cir.1989); Mickens v. United States, 700 F.2d 539, 540 (4th Cir.1985); Trerice v. Summons, 755 F.2d 1081, 1082 (4th Cir.1985). In Chappell, the Court dealt with a Bivens type claim of a service person against his superior, saying "[W]e hold that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." 462 U.S. at 305. The "Feres doctrine has been applied consistently to bar all suits on behalf of service members against the government based upon service-related injuries." Johnson, 481 U.S. at 687-688. See also Stanley, 483 U.S. at 683-684; Trerice; Mickens; Bois v. Marsh, 801 F.2d 462 (D.C.Cir.1986).
 
 
 7
 Murphy further asserts that his claim for First Amendment violation is not prohibited by the Feres doctrine because Congress has by 10 U.S.C. § 1034 provided that no person may restrict any member of the armed forces from communicating with a member of Congress, unless the communication is unlawful or violates a regulation necessary to the security of the United States.
 
 
 8
 He therefore contends that the trial court's analysis of the Feres doctrine is incomplete and that the trial court's holding failed to address the constitutional tort of "abridgement of Murphy's right under the First Amendment to petition his government," (Brief of Appellant, p. 7), and that such right is protected by federal law. He further contends that the action of his superior officers interfered with his right to communicate with a member of Congress as provided for in § 1034 and that their action violated his constitutional right of free speech. Section 1034 provides that a service person may write a member of Congress without sending the communication through official channels. This right was not interfered with. He wrote his letter without sending it through official channels. But that statute does not protect the circulation of a collective petition within a military base. It has no application here. See Brown v. Glines, 444 U.S. 348, 361 (1980).
 
 
 9
 Murphy here seeks damages for the alleged denial of his constitutional rights, but "Congress, the constitutionally authorized source of authority over the military system of justice, has not provided a damages remedy for claims by military personnel whose constitutional rights have been violated by superior officers." Chappell, 462 U.S. at 304.
 
 
 10
 The special nature of military life--the need for decisive action by officers and disciplined response by enlisted personnel--"would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command." Chappell, 462 U.S. at 304. In Bois, the plaintiff sought relief for alleged discrimination, declaratory and equitable relief based on alleged violation of due process and equal protection, conspiracy to deprive her of her Civil Rights in violation of 42 U.S.C. § 1985(3), and statutory and common law claims against her superior in his individual capacity. In upholding the trial court's dismissal, the court pointed out that:
 
 
 11
 Permitting Bois to attempt to prove that she was victimized by discrimination would necessarily require a civilian court to examine in detail the personnel and other command decisions which Bois claims were discriminatory. Such scrutiny would also likely require testimony by Army personnel about command decisions by Bois's superiors. 801 F.2d at 467-468.
 
 
 12
 The facts of this case as alleged by the plaintiff bring it clearly within the Feres doctrine. The judgment of the trial court is therefore affirmed.
 
 
 13
 AFFIRMED.