**Debra ADAMS, Individually and as Tutrix of Stella Adams and Bernita Holmes, Tutrix of Chavelle Oatis, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, et al., Defendants-Appellees.**

No. 83–3178.

United States Court of Appeals, Fifth Circuit.

April 2, 1984.

Levy, Smith & Gennusa, Alan Brandon Parker, New Orleans, La., for plaintiffs-appellants.

Joan Elaine Chauvin, Asst. U.S. Atty., New Orleans, La., Jeannie S. Bartlett, Capt., JAGC, Dept. of Army, Washington, D.C., for defendants-appellees.

Before BROWN, GEE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

Robert Oatis, a former serviceman, died after being circumcised at the New Orleans Public Health Service Hospital on March 10, 1975. In this action we are asked to decide whether the medical negligence that allegedly caused Oatis' death constituted an "injury received incident to military service," so as to bar his survivors, plaintiffs Debra Adams and Bernita Holmes,[1] from bringing suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1976). The trial court concluded that Oatis' injury was "incident to military service" and granted summary judgment for defendants United States and others.[2] For the reasons set out below, we disagree and reverse.

## Background

Oatis joined the Army in March 1971. In 1972, he was court-martialed on a charge of drug possession and sentenced to a bad conduct discharge. The court-martial and the imposition of the sentence were approved by the appropriate authorities in November 1973. In March 1973, Oatis returned to his hometown of New Orleans, Louisiana. During the next two years he lived in New Orleans and was employed by New Orleans Public Service, Inc. as a mechanic. He was not receiving pay from the Army and was

---

1. Plaintiff Debra Adams brought suit in her individual capacity as heir of the decedent and as tutrix of Stella Adams, Oatis' natural child. Bernita Holmes brought suit as tutrix of Chavelle Oatis, also Oatis' natural child.

2. Named as defendants are the United States of America, the United States Department of Health and Human Services, the United States Public Health Service, the United States Public Health Service Hospital at New Orleans, Juan Palomar, M.D., P. Pool, M.D., and M. Noto, C.R.N.A.

on a status described as "indefinite excess leave."

In March 1974, the Army notified Oatis that his appeal of the bad conduct discharge had been denied. The notice, entitled "Notice of Separation," directed Oatis to report to Fort Polk at his own expense for formal separation from the Army, and informed him that if he was unable to report he was to notify his unit by telephone. Oatis did not report to Fort Polk; it is unknown whether he called his unit. The Army had no further contact with Oatis.

In February 1975, Oatis sought treatment at the United States Public Health Service Hospital at New Orleans. Apparently, his authority for admission was an expired military identification card. It was determined that he would undergo surgery for treatment of his chronic pilonidal cysts and that he would be circumcised while under anesthesia. On March 10, 1975, while Oatis was on the operating table following circumcision, he suffered cardiac arrest and died.

■ After Oatis' death the Public Health Service Hospital first called officials at Fort Polk to determine his military status. The Army asserted that Oatis' military status was "active service-indeterminate excess leave pending discharge," entitling him to care at the hospital.[3]

Having exhausted their administrative remedies, plaintiffs Adams and Holmes subsequently filed suit under the FTCA. The district court granted defendants' motion for summary judgment on the ground that the FTCA claim was barred by the Feres doctrine, an implied exception to the statute holding that no action lies under the FTCA for injury to a member of the armed forces where the injury is "incident to military

service." *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

### Incident to Military Service: The Feres Test

The FTCA waives the sovereign immunity of the United States for negligent injury to persons or property—with statutory exceptions not relevant here. Shortly after the enactment of the statute in 1946, the Supreme Court rendered a series of decisions establishing what is now referred to as the *Feres* doctrine, a judicially-created exception to the FTCA: no action lies for a serviceman's injury "incident to military service," *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1948). The Court rationalized the "incident to service" bar to FTCA claims as follows:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.

*Brown,* 348 U.S. at 112, 75 S.Ct. at 143.

In the leading opinion of *Parker v. United States,* 611 F.2d 1007 (5th Cir.1980), this Court translated the policy considerations underlying the *Feres* doctrine into a test that a reviewing court should apply to determine whether an injury is "incident to military service" and hence whether the service member has an FTCA cause of action. Recognizing that the policy of preventing FTCA claims which would damage

---

**3.** Although plaintiffs stated in their briefs that the Army's status designation should be "viewed with suspicion" as self-serving, the issue in this case is not whether there exists a genuine issue of material fact rendering summary judgment improper, Fed.R.Civ.P. 56(e), but whether, on the undisputed facts, the law was correctly applied. *Cf. Parker v. United States,* 611 F.2d 1007, 1008 n. 1 (5th Cir.1980)

(applying law to undisputed facts to determine whether injury was "incident to military service" so as to preclude FTCA suit). As *Parker* necessarily implies, the question of what activity invokes the *Feres* doctrine is not a question of fact to which the "clearly erroneous" standard applies, but an issue requiring *de novo* appellate review.

the unique relationship of servicemen to the government mandates case-by-case assessment of the totality of the circumstances to determine whether the injured service member's particular status at the time of injury was such as to bring into play this government interest, the *Parker* court nonetheless identified specific factors to be considered in making the "incident to service" determination: the duty status of the serviceman, the site of injury, and the activity of the serviceman at the time of injury. While no single factor is necessarily dispositive, our applications of the *Parker* test—and, indeed, the results of our cases decided before *Parker*'s exposition of it—demonstrate that the duty status of the service member is usually considered the most indicative of the nature of the nexus between him and the government at the time of injury and is therefore the most important factor.

A. Duty status

*Parker* makes clear that duty status is to be viewed as a continuum from actual active duty at one extreme to discharge at the other:

> If an individual has been discharged from the service, his activities are normally not "incident to service." *See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).... At the other extreme, one who is on active duty and on duty for the day is acting "incident to service." *See Beaucoudray v. United States,* 490 F.2d 86 (5th Cir.1974). Between these extremes are degrees of active duty status ranging from furlough or leave to mere release from the day's chores. One on furlough or leave, as in *Brooks,* normally has an FTCA action.... One with only an unexercised right to a pass or who is only off duty for the day usually is held to be acting "incident to service." *E.g., Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Zoula v. United States,* 217 F.2d 81 (5th Cir.1954) (unexercised right to pass).[9]

**4.** *See United States ex rel. Okerlund v. Laird,* 473 F.2d 1286 (7th Cir.1973) (service member

[9] "Furlough" or "leave" is generally for a longer period and is charged against the soldier's record. A "pass" is a discretionary time off privilege granted by the supervising officer and not charged against the record. In either case, the service member can be recalled to work.

The *Parker* court found that the injured soldier's four-day leave status supported allowing him to pursue his FTCA claim:

> We find that the district court erred in holding that Parker's status was closer to *Feres* [barring an FTCA claim] than to *Brooks* [supporting an FTCA claim]. Parker had requested and received the right to be absent from his regular duties for four days and nights.... While Parker technically might not have been on a "furlough" or "pass," his exercised right to be absent for four days was actually more like a furlough than mere release from the day's duties.[10]

[10] Much has been made of Parker's being on "active duty," subject to recall, despite his four-day release from duty. The Government admits, however, than even soldiers on furlough can be recalled, yet those soldiers have an FTCA action if injured. We find the "active duty" distinction unpersuasive. *See Hand v. United States,* 260 F.Supp. 38, 41 (M.D.Ga. 1966).

*Parker* therefore rejected in principle the government's argument here that Oatis' "active duty—indefinite excess leave," from which warehouse status the Army could conceivably have recalled him for a court-martial, for example,[4] bars him from bringing an FTCA claim. Indeed, comparison of Oatis' duty status with that held not to bar an FTCA claim in *Parker* indicates that *a fortiori* Oatis' duty status should support maintenance of an FTCA action. *See also* cases cited in *Parker,* 611 F.2d at 1013–14.

■ The Army had discharged Oatis to the full extent of its ability to do so: all that remained to complete the paperwork was for Oatis to report to Fort Polk. To hold that this status is not tantamount to discharge for purposes of FTCA liability would be to hold that any former serviceman who failed to report for formal dis-

never issued discharge certificate subject to recall by Army and to military discipline).

charge proceedings could receive medical treatment for the rest of his life at government expense—a result which would fly in the face of equity and common sense.

### B. Place of injury and activity

Our cases applying the *Parker* test indicate that the other two factors identified in *Parker,* place of injury and activity of the serviceman at the time, are to be considered insofar as they reflect a special, protectible nexus between the serviceman and the government—not adequately reflected by his duty status—that would justify precluding an FTCA claim. Although language in one recent case, *Johnson v. United States,* 631 F.2d 34 (5th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981), might be read to suggest that servicemen injured in military hospitals by the negligence of army doctors do not have an FTCA cause of action,[5] *see id.* at 36, a closer examination of the facts of *Johnson* and the authorities cited therein demonstrates that claims of medical malpractice in a military hospital have been held barred only where the status of the service member at the time of seeking treatment has been such as to cut against allowing the action to proceed. In *Johnson,* for example, the alleged negligence consisted in dismissing from the post hospital a mentally disturbed serviceman and subsequently granting the man leave; both of these acts occurred while the service member was on active duty. *See also Shults v. United States,* 421 F.2d 170 (5th Cir.1969) (FTCA claim barred where sailor on 48-hour pass negligently treated at military hospital); *Lowe v. United States,* 440 F.2d 452, 453 (5th Cir.1971) (FTCA claim barred where serviceman on active duty negligently treated in base hospital).

That these holdings turn on the duty status of the serviceman accords with the Supreme Court's holding in *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed.

139 (1954), in which a discharged serviceman was allowed to pursue his FTCA claim as well as collect compensation under the Veterans Benefit Act[6] for an injury caused by the negligent treatment in a Veterans Administration Hospital of an injury to his left knee sustained while he was in active service. Acknowledging that Brown "was there [in the Veterans Hospital] because he had been in the service and because he had received an injury in the service," the Court nonetheless held that his claim was "not foreign to the broad pattern of liability which the United States undertook by the Tort Claims Act." 348 U.S. at 112, 75 S.Ct. at 143.

Implicit in *Brown* is the holding of a more recent case in this Circuit that is directly on point on this issue: *Bankston v. United States,* 480 F.2d 495 (5th Cir.1973). *Bankston* concerned a service member injured on the very day on which his terminal leave was to expire and he was about to be separated from the service, and rushed to the New Orleans Public Service Hospital where the allegedly negligent administration of contaminated blood later caused his death. Concluding that "the controlling factor ... is whether Bankston had been discharged from the service at the time of the alleged negligence *or that his status was tantamount to being discharged for the purpose of asserting this claim*", we remanded for a determination of Brown's status, 480 F.2d at 497–98. Here, as discussed above, Oatis' actual status is not in dispute and we have determined that it supports allowing the FTCA to proceed, thus being "tantamount to discharge for the purposes of [the FTCA] action."

The government argues that the fact that Oatis apparently gained admission to the Public Health Service facility by means of his expired military ID card makes any injury received there "incident to military

---

5. Even if such a blanket rule existed—we hold it does not—Oatis' case would not fall within such a rule: the New Orleans Public Service Hospital is not a "military hospital" and the doctors there are not "Army doctors." *Cf. Johnson,* 631 F.2d 34 (post hospital).

6. Recovery under the FTCA was reduced by the amounts paid as disability payments under the Veterans Benefit Act.

service." We conclusively rejected this argument in *Bankston:*

> The Government would have us hold that since Bankston was admitted to the United States Public Health Service Hospital solely on the authority of his valid military ID card, any malpractice at the hospital was directly incident to Bankston's military service. That conclusion is not only contrary to the Supreme Court's holding in *Brown,* but would overlook the formulation of *Feres,* that the Government's liability turns not on the reasons for the treatment from which the claim arises, but on the effect of a suit for damages on the military system.

*Bankston,* 480 F.2d at 497–98.

In the context of medical malpractice actions, the *Parker* inquiry as to the service member's activity at the time of injury is essentially subsumed into the inquiry as to his duty status at the time he sought treatment since the "activity" issue is couched as: "Was his treatment intended to return him to military service?" See *Bankston,* 480 F.2d at 496 (discussing *Shults,* 421 F.2d 170) ("With active military status, Shults would have remained in the service had he recovered."). *Cf. Shults,* 421 F.2d 170 (sailor on 48-hour pass when hospitalized); *Johnson,* 631 F.2d 34 (soldier on active duty); *Scales v. United States,* 685 F.2d 970 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983) (barring FTCA claim of deformed child where mother was on active duty at time of alleged malpractice).

We conclude that when all the relevant factors are weighed in the balance, the circumstances of this case are not such as to call into play the policy considerations underlying the *Feres* doctrine so as to preclude plaintiffs' FTCA claim. Therefore, we reverse the summary judgment and remand for further proceedings.

REVERSED and REMANDED.