Maria Elena **CORTEZ**, Individually and as Next Friend of Edna Alicia Cortez, Alma Elvira Cortez, and Alexandra Elena Cortez, Minors, Plaintiff–Appellant,

v.

**UNITED STATES** of America, Defendant–Appellee.

No. 87–1663.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1988.

---

Irwin M. Spector, Jose E. Troche, Ray Velarde, El Paso, Tex., for plaintiff-appellant.

Russell H. Putnam, Jr., Columbia, S.C., Chuck R. Pardue, Augusta, Ga., for amicus-CAMI.

Stephen E. Deardorff, Sp. Asst. U.S. Atty., El Paso, Tex., for defendant-appellee.

Before POLITZ, KING, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

We must decide whether the widow of a member of the military, who was on the Temporary Disability Retired List (TDRL) at the time of his death, is barred by the *Feres*[1] doctrine from bringing a suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80. Concluding that there is no *Feres* bar, we reverse the district court's dismissal and remand for further proceedings.

## Background

Roberto Cortez served on active duty with the United States Army from November 1972 until October 1975. He reenlisted in February 1982 and held the enlisted rank of Specialist Four. In May 1984 he was placed on the TDRL because of severe mental disorders. He was relieved of all military duty and was allowed to return home to Waco, Texas where he secured private employment. He was reevaluated a year later and was continued on the TDRL. During the next year he was hospitalized on several occasions for psychotic episodes and suicide attempts. In May 1986, following his second reevaluation, the medical officers recommended that he be placed on the Permanent Disability Retired List. Cortez was notified on May 21, 1986 of the administrative processing of this recommendation.

The following month Cortez lacerated his arms and wrists in a suicide attempt. Because of a military identity card found on his person he was taken for emergency care to the William Beaumont Army Medical Center. Left unattended in a room on the eighth floor, Cortez jumped to his death. Ironically, a few hours later the Physical Evaluation Board of the United States Army approved the recommendation that Cortez be permanently retired with a 70% disability assessment.

Maria Elena Cortez, the widow of Roberto Cortez, individually and on behalf of their three minor children, filed an administrative claim against the hospital, alleging negligence of its personnel for leaving Cortez alone in the eighth-floor room. Her claim was denied on the grounds that Cortez's death was incident to his military service and was thus barred by the *Feres* doctrine. She then filed the instant complaint. The government moved for a dismissal under Fed.R.Civ.P. 12(b)(6), contending that *Feres* and its progeny prevent the stating of a claim upon which relief could be granted. The district court agreed and this appeal followed. Mrs. Cortez contends that because her husband was on the TDRL his injury was not "incident to service" and, hence, her claim is not barred by the *Feres* doctrine.

## Analysis

The FTCA waives the sovereign immunity of the United States except in specified instances. One exception to the FTCA relates to members of the United States armed forces, for the FTCA does not apply to "any claim arising out of the combatant

---

1. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The Supreme Court first addressed this language in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), and held that all military personnel were not barred from suit under the FTCA. In permitting an FTCA suit by Brooks, a member of the military who was injured in an automobile accident while on furlough, the Court expressed no direct opinion on the cognizance of a claim under the FTCA for injuries sustained incident to military service.

The following year that issue was placed squarely before the Court, resulting in the seminal *Feres* ruling. The Supreme Court held that suits for injuries arising "out of or ... in the course of activity incident to service" could not be brought under the FTCA. *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. The Court supported its holding by referring to the distinctly federal nature of the relationship between the government and its military forces, and to the uniform compensation scheme for the injury or death of military personnel. In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Court expanded upon the availability of a comprehensive compensation scheme for military personnel who sustain service-connected injuries.

The *Feres* Court neither reversed nor disapproved of *Brooks*, but, rather, distinguished it, noting that the three consolidated *Feres* claimants were injured "while on active duty and not on furlough." *Feres*, 340 U.S. at 138, 71 S.Ct. at 155. The Court further observed that Brooks' injury "did not arise out of or in the course of military duty," and that Brooks was "under compulsion of no orders or duty and no military mission." *Id.* at 146, 71 S.Ct. at 159.

The Court reaffirmed *Brooks* in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), by refusing to bar an FTCA claim brought by a discharged service member who alleged negligence by employees of a Veterans Administration hospital during post-discharge surgery. The Court concluded that *Brooks*, not

*Feres*, governed its disposition because "[t]he injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline." *Id.* at 112, 75 S.Ct. at 143.

We expounded on the active duty/furlough distinction in *Parker v. United States*, 611 F.2d 1007 (5th Cir.1980). In *Parker*, we discussed a number of factors pertinent to determining whether an activity is "incident to service," notably including the duty status of the service member. We reflected on a continuum ranging from active duty to discharge. Between these outer limits we noted periods of furlough or leave, when activities are not incident to service, and a day's pass or an unexercised right to a pass, when they are. *Id.* at 1013. Because Parker was on a four-day pass when he was injured fatally by the negligence of another service member, we found the situation governed by *Brooks*, not *Feres*, and upheld an FTCA claim by Parker's widow. We concluded that the right to be absent for four days was "actually more like a furlough than mere release from the day's duties." *Id.* at 1014.

We reaffirmed *Parker* in *Adams v. United States*, 728 F.2d 736, 739 (5th Cir.1984), observing that of the several factors affecting the incident-to-service determination, "the duty status of the service member is usually considered the most indicative of the nature of the nexus between him and the government at the time of injury...." Robert Oatis, the service member in *Adams*, was on a status described as "indefinite excess leave." *Id.* at 737–38. He had no military duties, but had been released pending review of a bad-conduct discharge and was working at a civilian job when he died during surgery performed at a United States Public Health Service hospital. We upheld the FTCA claim, concluding that Oatis' injury was not incident to service. As in *Adams*, Cortez's treatment by personnel at the military hospital was not intended or likely to result in his return to active duty. His fatal injury was not an incident to service.

While some may have thought that the *Feres* doctrine had been eroded, the Supreme Court reaffirmed the continued vitality of the incident-to-service test, and the undergirding rationales, in *United States v. Johnson*, — U.S. —, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987). The government now argues that *Johnson* invalidates the *Brooks/Brown/Parker/Adams* line of cases. We do not agree. In *Johnson*, which strongly reaffirms *Feres*, a service member was on active duty when the helicopter he was piloting on a military rescue mission crashed into the side of a mountain. Applying the teachings of *Feres* leaves no doubt that Johnson's death was incident to his military service.

The government reurges the argument rejected in *Brooks*, *i.e.*, that all members of the armed forces who are not permanently retired should be barred from the prosecution of an FTCA claim. We reject that sweeping bar as being inconsistent with the holdings of the Supreme Court and of this court.

Our disposition today turns on an examination of the TDRL and its placement on the active duty/final discharge continuum. In doing so, we review the statutes defining the TDRL, the question of military discipline, and the military benefits received by Cortez.

Chapter 61 of title 10 of the United States Code, 10 U.S.C. §§ 1201-21, covers retirement or separation from the various departments of the armed services because of physical disability. The responsible Secretary may retire a member of the service who becomes permanently disabled. *Id.* § 1201. Pending a determination whether the physical disability is permanent, the Secretary may place the member on the TDRL for up to five years. *Id.* §§ 1202, 1205, 1210. Under § 1210, service members on the TDRL are examined periodically "to determine whether there has been a change in the disability for which he was temporarily retired." A consenting member found to be physically fit may "be recalled to active duty," if an officer, or "reenlisted," if an enlisted member of a regular component. *Id.* § 1211.

Inclusion on the TDRL is a unique military status. As the Court of Claims remarked in *Craft v. United States*, 544 F.2d 468, 471, 210 Ct.Cl. 170 (1976), "The nature of this status is a type of 'limbo.' A serviceman who is on the List is separated from the Army, but his final status is deferred pending additional medical evidence."

It is apparent that Cortez was not on active duty at the time of his death. Nor may a listing on the TDRL be considered the equivalent of active duty. The service member on the TDRL is separated from the service. Army regulations covering physical disability define "separation" as "[a]n all-inclusive [term] that is applied to personnel actions resulting from release from active duty, discharge, retirement...." Army Regulation 635-40 at 68 (13 December 1985 Update). "Active duty" is defined as "[f]ull time duty in the active military service.... All active duty with the active forces ..." *Id.* at 67.

It is clear from these definitions that separation means separation from active service. Indeed, the regulations state that "[a] member who is physically unqualified for further active duty has no inherent or vested right to be continued on active duty." *Id.* at 19. To be continued on active duty, one must make such a request and be qualified. *Id.* at 18-19. The distinction between TDRL status and active duty is maintained throughout the relevant statutes and in the Army regulations. On the other hand, retirees and those on the TDRL are sometimes joined together. For example, Army Regulation 40-3, Ch. 4, Section III, 4-11 (15 February 1985), provides that retired members of the armed forces and those on the TDRL are "authorized the same medical and dental care as active duty members."

The status of inclusion on the TDRL militates against the conclusion that the activity involved at the time of Cortez's death was incident to service. So does the second rationale, military discipline. Cortez's only military obligation was to report for the periodic reevaluations. His failure to do so would result only in the adminis-

trative sanction of discontinuance of disability pay. 10 U.S.C. § 1210(a); Army Regulation 635–40, Ch. 7, Section II, 7–10d. The government's argument that Cortez was subject to the sanctions of the Uniform Code of Military Justice is not persuasive of the issue before the court. At the time of his fatal defenestration, Cortez was not hospitalized at the army medical center pursuant to a military order or mission, direct or indirect. The concern for military discipline was explained in *Johnson:*

> [A] suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission. Moreover, military discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members ... could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.

— U.S. at ——, 107 S.Ct. at 2069, 95 L.Ed.2d at 658–59 (footnote omitted). That concern has no relevance in the present litigation.

Finally, *Feres, Stencel,* and *Johnson* refer to the military benefits the service member receives. At the time of his death, Cortez was receiving disability pay and was eligible for treatment in a government hospital. Neither benefit is sufficient to warrant a *Feres* bar. Cortez's death was not caused by a service-connected injury. *Feres* is applicable only to such injuries.

Based on the foregoing, we hold that a member of the armed forces carried on the Temporary Disability Retired List is not, as a consequence of that status, prevented by the *Feres* exception from bringing an action under the Federal Tort Claims Act.[2] The judgment of the district court is accordingly REVERSED, and the matter is REMANDED for further proceedings.

REVERSED and REMANDED.

---

**2.** In so holding we reach a conclusion directly opposed to that reached by our Eleventh Circuit colleagues. *See Ricks v. United States,* 842 F.2d 300 (11th Cir.1988).