Thomas N. HARVEY, Jr.,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 88–4222.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1989.

Tony C. Tillman, Tillman & Anderson, Leesville, La., for plaintiff-appellant.

Lawrence W. Moon, Jr., Thomas B. Thompson, Asst. U.S. Attys. Joseph S. Cage, Jr., U.S. Atty., Lafayette, La., for defendant-appellee.

Before WISDOM, GARWOOD, and DAVIS, Circuit Judges.

WISDOM, Circuit Judge:

This case requires us to determine whether the *Feres*[1] doctrine bars a member of the military, allegedly injured while on medical hold for disability processing, from bringing suit under the Federal Tort Claims Act (FTCA).[2] We conclude that the *Feres* doctrine does not bar the plaintiff's action. Accordingly, we reverse the magis-

---

1. The *Feres* doctrine, established in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), precludes a member of the military who suffers injury incident to service from bringing suit against the government to recover for the injury.

2. 28 U.S.C. §§ 2671–2680 (1982).

trate's order and remand the case for further proceedings.

On September 25, 1980 the United States Air Force placed Sgt. Thomas N. Harvey, Jr. on terminal leave pending his October 14, 1980 estimated separation date from active military service. Harvey had served four years of a six-year term of enlistment and was scheduled to finish his enlistment in the Air Force Reserve. In preparation for his separation, Harvey surrendered his military identification card, signed for the release of all his records—including his pay and medical records—and received his final paycheck. Harvey then left his duty station at Nellis Air Force Base and returned to civilian life in Odessa, Texas.

Several days later, while on terminal leave, Harvey was struck by an automobile and injured. He was taken to a nearby civilian hospital where he was treated for his injuries and ultimately released on November 18, 1980. As a result of this accident, Harvey's association with the military continued. The parties contest Harvey's military status after October 14, 1980, his scheduled separation date. It is uncontested, however, that Harvey sought military medical care for his injuries in the following months. In early December he reported to Lackland Medical Center but was denied admittance because he did not have military identification. On January 26, 1981 the Air Force issued Harvey a permanent disability retirement identification card. He used the card to gain access to military medical facilities during January and early February. In early February a medical board convened and recommended that Harvey be placed on temporary disability retirement leave (TDRL). At that time Harvey signed a document stating that he desired to remain in military service. The Air Force relieved Harvey from active duty and placed him on TDRL in mid–April 1981. Harvey ultimately was retired on October 9, 1985.

In February of 1986 Harvey filed suit against the government under the FTCA. The complaint alleged that through malpractice or negligence, medical personnel failed to treat an infection that developed in Harvey's leg. As a result of the infection, Harvey's leg was amputated. The government's motion to dismiss Harvey's claim under the *Feres* doctrine was granted and this appeal followed. Although Harvey's complaint alleged that the injury occurred on or about February 19, 1981,[3] later, in opposition to the government's motion to dismiss, Harvey averred that the injury occurred *before* February 5, 1981.[4] We thus confine our inquiry to the plaintiff's military status from the time of his accident in September of 1980 until the time of the alleged wrongful conduct in January or early February of 1981. Harvey's signing a form on February 5, 1981 stating his desire to remain in the military service has no bearing on our decision.

Our determination of the issue whether the *Feres* doctrine prevents Harvey from bringing suit against the government involves two questions. First, whether the magistrate's factual determination that Harvey was on medical hold at the time of the alleged malpractice is clearly erroneous. Second, whether, as a matter of law, Harvey's medical hold was tantamount to discharge or separation so that injuries received during that period cannot be considered incident to military service.

■ Turning to the first question, Harvey contends that the Air Force's attempt to extend his period of active duty by placing him on medical hold for disability processing failed or was invalid under military regulations. The magistrate's contrary conclusion cannot be overturned unless we find that his factual determinations were clearly erroneous. We conclude that they were not.

Harvey maintains that his scheduled October 14, 1980 separation date had passed before the Air Force was able to place him on a valid medical hold. Harvey argues that several of the government's exhibits show that the separation was effective as

of October 14, 1980. According to other government exhibits, however, the Air Force initiated a medical hold on October 10, 1980, four days before Harvey's scheduled separation. (Exhibits 4 & 5). We further note that Harvey failed to produce any Final Notice of Discharge as required by Air Force Regulations. Harvey maintains that his authorization for discharge is the same as a Notice of Discharge. Correctly viewed, an authorization for separation is the paperwork that initiates the separation process; the Notice of Separation is the order acknowledging the final effectiveness of the separation authorization. We further observe that Harvey received a certification of release or discharge after his April 14, 1981 separation.

Harvey contends, alternatively, that the Air Force's attempt to extend him in medical hold status was invalid. Harvey argues that under 10 U.S.C. § 507(a) a service member's term of enlistment can be extended for medical care only with the member's consent. We note, however, that the medical hold only extended Harvey's active duty status; his term of enlistment was not affected. According to Air Force Regulation AFR 160–43, 1–4e(1)(a), the Air Force Military Personnel Center may order a medical hold that extends the period of *active duty* past the estimated separation date for purposes of medical examination. This Regulation contains no requirement for consent by the service member.

The Air Force clearly intended to place Harvey on medical hold. Moreover, Harvey and the Air Force acted as though a medical hold was in effect. Because the magistrate's findings are not clearly erroneous,[5] we affirm his conclusion regarding Harvey's military status at the time of the alleged malpractice.

We must next determine whether as a matter of law a medical hold is tantamount to discharge and thus does not implicate the *Feres* doctrine. Although the FTCA generally waives the sovereign immunity of the United States and permits a plaintiff to sue the government, that Act contains several exceptions. For example, the FTCA does not apply to "any claim arising out of the combatant activities of the military or naval forces, or the coast guard, during time of war".[6] In *Brooks v. United States*,[7] the United States Supreme Court interpreted this language as not precluding a suit brought by a soldier for injuries sustained while on furlough. The Court specifically reserved opinion on the issue of a soldier's right to sue for injuries sustained while acting incident to service. The following year in *Feres v. United States*,[8] the Supreme Court held that suits for "injuries arising out of or ... in the course of activity incident to service" could not be brought under the FTCA. The Court distinguished *Brooks* by pointing out that Brooks was injured while on furlough, not active duty. Furthermore, Brooks's injury was not in the course of duty, nor was Brooks under any compulsion of order or military mission.

Recently, in *United States v. Johnson*,[9] the Supreme Court re-examined the rationale underpinning *Feres* and reaffirmed its decision in that case. The Court noted that the significant concerns of *Feres* include the nature of the service person's military obligation at the time of injury, the extent to which other military benefits compensate the service member for the injury, and the impact of the tort suit on the federal nature of the military and on military discipline.

We must consider the extent to which a medical hold is tantamount to service on active duty. In this Circuit we have "expounded on the active duty/furlough

---

**5.** *Menchaca v. Crysler Credit Corp.,* 613 F.2d 507 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).

**6.** 28 U.S.C. § 2680(j) (1982).

**7.** 337 U.S. 49, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949).

**8.** 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

**9.** 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

distinction"[10] by noting that duty status is a continuum with active duty on one end and complete discharge or separation on the other. We observed in *Parker v. United States* that there "are degrees of active duty status ranging from furlough or leave to mere release from the day's chores."[11] The duty status of the service member usually is considered the most important factor in the *Feres* "incident to service" analysis.[12] In *Parker* the plaintiff was on a four-day leave when he was fatally injured. We concluded that his injury was not incident to service and that he was not acting pursuant to military orders at the time of his injury.

Similarly, in *Adams v. United States*,[13] a service member, Robert Oatis, died during surgery performed at a United States Public Health Service Hospital. At the time of the surgery, Oatis was employed in a civilian job and was on release from the military pending the review of bad conduct charges. We stated that the duty status of the claimant is indicative of the nexus between him and the military at time of the injury. *Adams* reflects that when the connection between the service member and the military is tangential and insubstantial, none of the concerns underlying the *Feres* doctrine is implicated. Because Oatis's status, "active service—indefinite excess leave pending discharge",[14] was tantamount to discharge, we upheld his claim. The resolution of the present case thus turns on where the status of a medical hold falls in the continuum between active duty and final discharge.[15]

Air Force Regulations usually do not require a medical examination before separation.[16] A medical hold, however, is a means of facilitating a medical examination by authorizing retention on active duty beyond the estimated termination date. At the end of a medical hold period, a service member is either separated as previously planned or placed on military disability. Thus, were it not for the medical hold, Harvey would have been separated on October 14 as planned. Moreover, once the hold was lifted, Harvey could only have been separated as planned, freeing him to enter the Air Force Reserve to complete his enlistment, or retired from all service, active and reserve, because of disability.

■ Recently, in *Cortez v. United States*,[17] we ruled that a service member on Temporary Disability Retirement Leave (TDRL) could sue under the FTCA. We concluded that TDRL status was not equal to active duty status because active duty service requires that a service member meet certain health and fitness standards not required of a service member on TDRL. Although a medical hold extends the period of active duty, the sole purpose of the extension is to facilitate a medical examination. Thus, Harvey's only obligation to the military was to appear for medical evaluations. Harvey gained access to military medical facilities by using a disability identification card. Like TDRL, a medical hold is a position in limbo, a processing point on the road to either separation or disability discharge.[18] Consequently, we hold that a

---

**10.** *Cortez v. United States,* 854 F.2d 723, 725 (5th Cir.1988).

**11.** *Parker v. United States,* 611 F.2d 1007, 1013 (5th Cir.1980).

**12.** *Adams v. United States,* 728 F.2d 736, 738 (5th Cir.1984).

**13.** *Id.* at 739.

**14.** *Id.*

**15.** In *Bankston v. United States,* 480 F.2d 495 (5th Cir.1973), we determined that a member of the service on terminal leave *may* sue the government under the FTCA, if his status is tantamount to discharge. Harvey argues that *Bankston* should control our disposition of this

case. *Bankston,* however, is not dispositive of the issue of whether terminal leave is tantamount to discharge. In *Bankston* we remanded the case for factual findings to determine whether Bankston had been discharged at the time of the negligence or whether his terminal leave status was tantamount to discharge.

**16.** AFR 160–43, 1–4a.

**17.** 854 F.2d 723 (5th Cir.1988). *Contra Ricks v. United States,* 842 F.2d 300 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1770, 104 L.Ed.2d 5 (1989).

**18.** The significance of the nature of this extension is highlighted by *Adams v. United States,* where the Court stated that in medical malpractice cases it will consider whether the treatment in question was meant to return the service

member of the service on medical hold with a disability identification card is not a part of the active military force.

Our inquiry does not end here, however. We must further examine the effect our decision has on the concerns underlying the Supreme Court's decisions in *Feres* and *Johnson*. In doing so we look at the military benefits Harvey received while on medical hold and the potential disruption of military discipline that Harvey's suit would create.

Indisputably, Harvey received some compensation from the military during the time he was on medical hold from October 14, 1980 through April 1, 1981. In *Cortez* we held that the service member's receipt of disability pay and medical treatment in a government hospital did not constitute benefits sufficient to warrant a *Feres* bar. Similarly, the "several casual and partial" payments in lieu of normal checks from October 15, 1980 through April 1, 1981, the period of time during which Harvey was on medical hold, do not amount to benefits sufficient to warrant a *Feres* bar.

Finally, neither the federal structure of the military nor the concern over military discipline is implicated in the present case. Harvey's suit would not involve any issue pertaining to the command structure of the Air Force nor require us to second-guess any military order.

For the foregoing reasons we conclude that Harvey, as a member of the service placed on medical hold, is not foreclosed by the *Feres* doctrine from suing the government under the FTCA. In reaching this decision, we are aware of a recent Tenth Circuit case reaching a contrary result.[19] Nevertheless, this Court's decision in *Cortez* and the special facts of this case lead us to an opposite conclusion.

The magistrate's order is REVERSED. We REMAND the case to the district court for further proceedings consistent with our opinion in this case.

---

member to military service. 728 F.2d 736, 741. *See also Cortez v. United States,* 854 F.2d 723, 725.

**19.** *See Madsen v. United States, ex rel. U.S. Army, Corps of Engineers,* 841 F.2d 1011 (10th Cir.1987). We note that unlike the Tenth Circuit's analysis in *Madsen,* we find it necessary in this case to consider the nature of the service member's active duty. *Id.* at 1013.