**Billie A. BERRY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 90–2192–O.

United States District Court,
D. Kansas.

Aug. 19, 1991.

David W. Boal, Boal & Jeserich, Kansas City, Kan., for plaintiff.

Robert A. Olsen, U.S. Attorney's Office, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on the defendant's motion to dismiss, or in the alternative, for summary judgment. Plaintiff filed this negligence action against the defendant pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff's claim arises out of medical treatment she received at a military hospital while she was on the United States Army's Temporary Disability Retirement List. In the instant motion, defendant claims that it is immune from liability pursuant to the *Feres* doctrine. For the reasons set forth below, the court will grant the defendant's motion.

### I. Background

The controlling facts of this case are undisputed.[1] Plaintiff Billie A. Berry ("Berry" or "plaintiff") was an active member of the United States Army assigned to participate in basic training exercises at Fort Jackson, South Carolina, in the fall of 1987. On or about October 26, 1987, plaintiff injured her right knee during training. Plaintiff was taken to the hospital at Fort Jackson where she was initially told that her knee was sprained.

Unfortunately, the knee continued to cause plaintiff problems. Within a few days of the initial injury, plaintiff spoke with a physical therapist and an orthopedic surgeon and received conflicting opinions about the extent of her injury and the appropriate course of treatment.

In November of 1987, plaintiff was transferred to the Defense Language Institute in Monterey, California. While there, plaintiff saw a doctor who referred her to the Orthopedic Clinic at Fort Ord, Califor-

---

1. Defendant has attached to its motion two letters from plaintiff dated July 12, 1989, and October 25, 1989. In her response to the government's motion, the plaintiff has not controverted any of the facts contained in those letters.

nia. Plaintiff's treating doctor at Fort Ord determined that plaintiff had suffered a complete tear to her anterior cruciate ligament ("ACL"). Accordingly, plaintiff was scheduled for arthroscopic surgery on February 24, 1988.

On February 24, 1988, plaintiff underwent surgery on her knee. According to plaintiff, the doctors confirmed that the ACL was torn and had deteriorated since the time of the injury. However, according to plaintiff, the doctors determined that the ACL could not be sewn together. Following the surgery, plaintiff was placed on a physical therapy program and was told that if her knee didn't get any better she would have to undergo reconstruction of the ACL using an artificial graft.

In April of 1988, plaintiff decided to undergo the reconstructive surgery at a location near her family home. Accordingly, plaintiff asked that she be placed on the Army's Temporary Disability Retirement List ("TDRL"). After reviewing plaintiff's case, the Army gave plaintiff a 20% disability rating. Because such a rating was too low to allow plaintiff to be placed on the TDRL, plaintiff requested that the initial rating be revoked and that her case be reviewed by the Army Medical Board.[2] Upon review, the Medical Board gave plaintiff a 30% disability rating and placed her on the TDRL.

On November 30, 1988, plaintiff underwent reconstructive surgery at Munson Army Hospital at Fort Leavenworth, Kansas. Plaintiff alleges that several weeks after the surgery she began to experience pain, "popping" and swelling in her right knee. Plaintiff alleges that during a follow-up visit to the attending surgeon in early 1989, she was told that the surgery had failed and that she might need to undergo another procedure.

The record does not disclose whether plaintiff underwent additional surgery. Further, the record does not disclose plaintiff's current status with the United States Army.

On June 4, 1990, plaintiff filed the instant action alleging that the reconstructive surgery was negligently performed.

## II. Discussion

In its motion, the government argues that plaintiff's action is barred by the doctrine established in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres,* the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. Because the doctrine has been uniformly applied to bar medical malpractice claims by active duty service members, *see, e.g., Madsen v. United States,* 841 F.2d 1011 (10th Cir.1987); *Rayner v. United States,* 760 F.2d 1217 (11th Cir.1985), the controlling question in this case is whether Berry's placement on the TDRL means that the alleged negligence of the military medical personnel at Fort Leavenworth was not "incident to service" within the meaning of *Feres.*

As the parties have noted, the circuits that have addressed this issue are divided.[3] Both the Fourth and the Eleventh Circuits have held that a service member's status on the TDRL does not mean that alleged malpractice by military medical personnel is not "incident to service." *See Kendrick v. United States,* 877 F.2d 1201 (4th Cir. 1989), cert. dismissed, 493 U.S. 1065, 110 S.Ct. 1104, 107 L.Ed.2d 1013 (1990); *Ricks v. United States,* 842 F.2d 300 (11th Cir. 1988), cert. denied, 490 U.S. 1031, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1989). In so holding, both circuits have noted that place-

---

2. In one of plaintiff's letters that is attached to the government's motion, plaintiff states her reasons for seeking a review of the initial disability rating:

> The Army reviewed my case and rated me at 20% disabled and a person at my rank was given only $1500.00 and then sent home. I didn't want that. I wanted my knee repaired

and back in the Army where I would have my medical benefits and the career I had worked for and hoped of having. I had to be at least rated 30% disabled to be put on TDRL.

3. The Tenth Circuit has not had an opportunity to address this issue.

ment on the TDRL does not extinguish the relationship between the service member and the armed forces nor does it relieve a service member from his or her duties. *Kendrick,* 877 F.2d at 1205; *Ricks,* 842 F.2d at 301. In contrast, the Fifth Circuit has held that TDRL status is not equal to active duty status "because active duty service requires that a service member meet certain health and fitness standards not required of a service member on TDRL." *Harvey v. United States,* 884 F.2d 857, 860 (5th Cir.1989); *see also Cortez v. United States,* 854 F.2d 723, 725–27 (5th Cir.1988). Accordingly, the Fifth Circuit has held that service members on TDRL are not prevented by the *Feres* doctrine from bringing actions under the FTCA for injuries incurred while on TDRL. *Cortez,* 854 F.2d at 727.

After careful consideration, the court finds the analysis of the Fourth and Eleventh Circuits more persuasive in light of the facts of the case at hand. In *Harvey,* the Fifth Circuit described TDRL as "a position in limbo, a processing point on the road to either separation or disability discharge." 884 F.2d at 860. Although such a description was certainly applicable to the TDRL status of the plaintiffs in *Harvey* and *Cortez,*[4] such does not always appear to be the case. *See, e.g., Ricks,* 842 F.2d at 301 (court noted that the plaintiff was subject to "a possible return to duty pending the outcome of future physical exams.") In the instant case, plaintiff Berry specifically requested that she be placed on TDRL so that she could undergo the reconstructive surgery and return to active duty. Thus, Berry's TDRL status, at least at the time of the alleged negligence, cannot be described as "a processing point on the road to either separation or disability discharge." Because Berry's surgery was intended to return her to active duty, *see Adams v. United States,* 728 F.2d 736, 741

(5th Cir.1984) (noting that, in the context of medical malpractice actions, the inquiry as to the service member's activity at the time of injury is couched as: "Was his treatment intended to return him to military service?"), and because she was admitted to the Army hospital at Fort Leavenworth solely because of her military status, the court adopts the reasoning of the Fourth and Eleventh Circuits and concludes that Berry's FTCA action is barred by *Feres* because her alleged injury occurred "in the course of activity incident to service."[5] *Kendrick,* 877 F.2d at 1206.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss, or in the alternative, for summary judgment (Doc. # 6) is hereby granted.

---

**4.** In *Harvey,* the plaintiff was injured while on terminal leave. 884 F.2d at 858. Thereafter, he was placed on TDRL and later retired. *Id.* In *Cortez,* the plaintiff was placed on TDRL because of severe mental disorders and was eventually recommended for placement on the Permanent Disability Retired List. 854 F.2d at 724.

**5.** The court adopts, in its entirety, the Fourth Circuit's analysis in *Kendrick* concerning the consistency of a *Feres* bar to a claim by a service member on TDRL with the three underlying rationales of the *Feres* doctrine. *See Kendrick,* 877 F.2d at 1204–05.