**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KENNETH DAVID BRADLEY; CECILE
BRADLEY, a minor child, by her next
friend and father Kenneth Bradley;
THE ESTATE OF SHARON BRADLEY,
DECEASED, by and through Kenneth
Bradley, as personal representative,
<u>Plaintiffs-Appellants,</u>

No. 96-2569

v.

UNITED STATES OF AMERICA,
<u>Defendant-Appellee,</u>

v.

SPECTRUM EMERGENCY CARE,
INCORPORATED, d/b/a Synergon,
<u>Third Party Defendant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-95-3676-JFM)

Argued: October 28, 1998

Decided: November 30, 1998

Before WIDENER and WILKINS, Circuit Judges, and
G. ROSS ANDERSON, JR., United States District Judge for the
District of South Carolina, sitting by designation.

_____

Reversed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Widener and Judge Anderson joined.

**COUNSEL**

**ARGUED:** James Leigh Capps, II, LAW OFFICES OF DOMINICK J. SALFI, Maitland, Florida, for Appellants. Donna Carol Sanger, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Gerard E. Mitchell, STEIN, MITCHELL & MEZINES, Washington, D.C., for Appellants. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Kenneth Bradley brought this action on behalf of the estate of his deceased wife Sharon Bradley (Bradley), himself, and his minor daughter[1] under the Federal Tort Claims Act (FTCA), see 28 U.S.C.A. §§ 2671-80 (West 1994), claiming that Bradley's death was the result of medical malpractice by military personnel. The Estate now appeals a decision by the district court granting summary judgment in favor of the United States on the basis that Bradley's injuries were incident to service and hence that this action is barred by the exception to the waiver of sovereign immunity announced in Feres v. United States, 340 U.S. 135, 146 (1950). We reverse.

I.

Bradley enlisted in the Navy in 1982 and served as a medical laboratory technician. In 1989, while on active duty, Bradley was accidentally punctured with an inoculator loop that was infected with Staphylococcus Aureus (Staph A) bacteria. Initially, Bradley suffered a Staph A infection in her left arm, and subsequently the Staph A infection reoccurred in her right foot. This latter complication required Bradley's hospitalization from December 1989 to January 1990. Although Bradley's right foot was determined to be free of the Staph A infection by the end of 1991, Bradley was by then wheelchair

_____

[1] For ease of reference, we refer to this action as having been prosecuted by "the Estate."

2

bound, able to walk only 15 minutes per day, and able to work only part-time. In November 1991, Bradley received a disability rating of 30 percent. She was removed from active-duty status and placed on the Navy's Temporary Disability Retirement List (TDRL).

In February 1992, Bradley had a scheduled appointment at the National Naval Medical Center (NNMC) in Bethesda, Maryland concerning bone grafting to her foot to repair damage caused by the Staph A infection. Bradley was flown to NNMC by military transport from her home in Orlando, Florida via Keesler Air Force Base in Mississippi. During this trip, on February 14, 1992, Bradley began to experience high fever and severe chest pain. She notified medical personnel during her overnight stay at Keesler about her condition. Military personnel there took no action and sent her on to NNMC. Once Bradley arrived at NNMC, she proceeded to the emergency room. Although Bradley made several trips to the emergency room, she was not admitted until the evening of February 19. Further, she was not treated with an antibiotic until February 20. Bradley's condition deteriorated quickly, and she died after an eight-day medically induced coma on March 2. An autopsy report indicated that she died as a result of a Staph A infection of the heart.

The Estate filed this action in federal district court in Texas alleging medical malpractice arising from the treatment Bradley received at Keesler and NNMC. Because litigation relating to this incident was already pending in Maryland and because the majority of the witnesses were located there, the Texas district court transferred the action to Maryland. Thereafter, the United States moved to dismiss on the basis of the Feres doctrine. See Fed. R. Civ. P. 12(b)(1), (6).

The district court considered materials outside the pleadings that were submitted by both parties, treating the motion as one for summary judgment, and ruled in favor of the United States. See Fed. R. Civ. P. 56. For purposes of summary judgment, the district court accepted that the evidence was sufficient to raise a genuine issue of material fact concerning whether Bradley's condition was related to her prior Staph A infection.[2] Assuming that Bradley's infection "was

_____

[2] Bradley submitted an expert's affidavit opining:

3

an independent medical problem that arose only after she left active duty status" and was placed on TDRL status, the court reasoned that the dispositive question was whether Bradley's condition was "incident to service." J.A. 473 (internal quotation marks omitted). The district court recognized that under a line of Fifth Circuit authority "`a member of the armed forces carried on the Temporary Disability Retired List is not, as a consequence of that status, prevented by the Feres exception from bringing an action under the Federal Tort Claims Act.'" J.A. 474 (quoting Cortez v. United States, 854 F.2d 723, 727 (5th Cir. 1988)). Nevertheless, the district court reasoned that a decision of this court, Kendrick v. United States, 877 F.2d 1201 (4th Cir. 1989), dictated a different result. The district court also rejected Bradley's argument that because the case had been transferred from Texas, the law of the Fifth Circuit should apply.

II.

The Estate contends that the district court erred in concluding that the Feres doctrine bars this action. In order to apply the Feres doctrine properly, it is necessary to understand its development.

In Brooks v. United States, 337 U.S. 49, 52-54 (1949), the Supreme Court held that servicemen on leave from active duty could sue under the FTCA to recover for injuries sustained on a public highway inflicted by a government employee driving a truck belonging to the United States at least when the injuries were not incident to or caused by military service. Subsequently, in Feres, another decision addressing whether active-duty servicemen could maintain an FTCA action,

_____

> [T]here is no evidence of any ankle or bony involvement[;] it is my opinion to a reasonable medical certainty that there is no established etiology for this staphylo[co]ccus aureas endocarditis other than the clear evidence of some upper respiratory involvement that progressed from bacteremia to sepsis, pleurisy and eventually endocarditis.

J.A. 292-93. And, the Government conceded that there was a genuine issue of fact on this point during argument both before this court and the district court.

4

the Supreme Court distinguished Brooks and held "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres v. United States, 340 U.S. 135, 146 (1950).**3**

In United States v. Brown, 348 U.S. 110 (1954), the Supreme Court applied these cases in an action by a discharged veteran who alleged medical malpractice at a veterans' hospital. The Court wrote:

> The present case is, in our view, governed by Brooks, not by Feres. The injury for which suit was brought was not incurred while [Brown] was on active duty or subject to military discipline. The injury occurred after his discharge, while he enjoyed a civilian status. The damages resulted from a defective tourniquet applied in a veterans' hospital. [Brown] was there, of course, because he had been in the service and because he had received an injury in the service. And the causal relation of the injury to the service was sufficient to bring the claim under the Veterans Act. But, unlike the claims in the Feres case, this one is not foreign to the broad pattern of liability which the United States undertook by the Tort Claims Act.

Id. at 112.

---

**3** Three rationales support the Feres exception to the broad waiver of sovereign immunity contained in the FTCA. See United States v. Johnson, 481 U.S. 681, 688 (1987). "First,`[t]he relationship between the Government and members of its armed forces is"distinctively federal in character.'"" Id. at 689 (alteration in original) (quoting Feres, 340 U.S. at 143). "Second, the existence of ... generous statutory disability and death benefits is an independent reason why the Feres doctrine bars suit for service-related injuries." Id. And, third, "suits brought by service members against the Government for injuries incurred incident to service are barred by the Feres doctrine because they are the `type[s] of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" Id. at 690 (quoting United States v. Shearer, 473 U.S. 52, 59 (1985)).

5

In Kendrick v. United States, 877 F.2d 1201 (4th Cir. 1989), a panel of this court addressed whether the Feres doctrine barred an FTCA action brought by an individual on TDRL. In that case, an active-duty serviceman began having seizures, and military physicians prescribed Dilantin, a potentially toxic drug. After the serviceman was placed on TDRL because his disability rendered him unfit for duty, he began to experience memory loss, difficulty in walking, and other symptoms consistent with Dilantin toxicity. He was examined by military physicians who continued him on the same dosage of Dilantin and allegedly did not properly monitor the level of Dilantin in his blood. He brought suit, alleging that the post-TDRL failure of the doctors to monitor his blood level constituted a post-service act of malpractice and that consequently his action was not barred by the Feres doctrine. This court disagreed, writing:

> We are unpersuaded that [Brooks and Brown] govern the case at bar. First, the focus of Feres is not upon when the injury occurs or when the claim becomes actionable, rather it is concerned with when and under what circumstances the negligent act occurs. The alleged negligent act of prescribing Dilantin without monitoring the patient's blood level commenced while Kendrick was on active duty under the care of military physicians. All of Kendrick's medical treatment arose out of an activity incident to service. Second, the Court in Brown placed great emphasis on Brown's "civilian status" as one of the distinguishing features between his claim and that of the plaintiffs in Feres. Unlike Brown, Kendrick was not a civilian when the alleged negligent act occurred, and he has remained subject to military discipline throughout his continuing course of medical treatment.

Kendrick, 877 F.2d at 1203-04 (citations omitted). Importantly, in an accompanying footnote, the panel specifically distinguished the Fifth Circuit decision in Cortez v. United States, 854 F.2d 723 (5th Cir. 1988), which held that the Feres doctrine did not bar a post-service medical malpractice suit by an individual on TDRL status at the time of the complained of actions. See Kendrick, 877 F.2d at 1204 n.2. In Cortez, the court held that a claim for damages arising from the death of an individual on TDRL status who committed suicide by jumping from an eighth-floor window after being left alone in a military hospi-

6

tal following a suicide attempt was not barred by the Feres doctrine. The Kendrick panel distinguished Cortez , writing:

> While the [Cortez] court held that an individual on the TDRL, under certain circumstances, could bring a FTCA action, Cortez's case can be distinguished from the case at bar. Cortez's suicide while in a military hospital was found to be an isolated act independent of any service-connected injury. Kendrick's claim, in contrast, arose out of a continuous course of medical treatment commenced while he was on active duty.
>
> We do not hold that the Feres doctrine bars an action based upon a truly independent or post-service tort.

Kendrick, 877 F.2d at 1204 n.2. Thus, Kendrick held that the Feres doctrine bars an action by a TDRL-status individual for post-service medical malpractice when the acts giving rise to the claim of negligence began while the plaintiff was on active duty.

The Government argues that the reasoning of the Kendrick decision is controlling here. It contends that this is so because the damages Bradley suffered while on TDRL status resulted from medical treatment arising from an accident she suffered incident to service while she was on active duty and that the post-service treatment of which the Estate complains was merely a continuation of her earlier treatment. In order to understand the Government's argument, however, we must first examine what the Government does not argue.

The Government does not contend that the condition that led to Bradley's death and for which she sought emergency medical treatment was a reoccurrence of the Staph A infection she suffered incident to service. Rather, it is undisputed that the evidence is sufficient to raise a genuine issue of material fact as to whether the underlying infection that killed Bradley was a reoccurrence of the Staph A infection she received during her service. Thus, for purposes of summary judgment we must accept that the condition for which Bradley required treatment and of which she ultimately died was not a reoccurrence of her previously acquired Staph A infection. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (explaining that in

7

reviewing appropriateness of summary judgment, the nonmoving party is entitled to the most favorable inferences that reasonably may be drawn from the forecasted evidence). Viewed in this light, the underlying facts here, unlike those in Kendrick , do not present a situation in which the plaintiff was receiving post-service treatment for a condition that arose out of military service.

Moreover, even were we to conclude that Bradley's infection was a reoccurrence of the Staph A infection she received incident to service, the present facts would be distinguishable from those found to be controlling in Kendrick. The conduct giving rise to the action in Kendrick was "[t]he alleged negligent act of prescribing Dilantin without monitoring the patient's blood"--an act of medical malpractice that began while Kendrick was on active duty. Kendrick, 877 F.2d at 1203; see Appelhans v. United States, 877 F.2d 309, 311-12 (4th Cir. 1989) (holding that an action to recover for injuries suffered by a serviceman while on active duty as a result of medical malpractice at base hospital was barred by Feres doctrine because, as a general rule, injuries sustained as a result of medical treatments at military facilities are incident to service). In sharp contrast, the allegedly negligent conduct giving rise to the claims of medical malpractice at issue here cannot be characterized as having begun while Bradley was on active duty. Rather, the allegedly negligent medical treatment of which the Estate complains began after Bradley was placed on TDRL status.

Instead of claiming that the condition for which Bradley sought emergency medical treatment was a reoccurrence of her Staph A infection, the Government contends:

> [T]he purpose of the trip to Bethesda was to follow-up on the foot condition which was a secondary effect of her initial on-duty accidental wound .... Thus, the sole reason Corpsman Bradley was already under the care of military physicians at the time she became ill was her service-related injury.

Brief of Appellee at 17. This argument, however, cannot be reconciled with the decision of the Supreme Court in Brown. As explained above, in Brown the Supreme Court held that the Feres doctrine did

8

not bar an action by a discharged veteran alleging negligence in treatment at a veterans' hospital for an injury suffered while a member of the armed forces. See Brown, 348 U.S. at 112. Accordingly, the fact that Bradley received allegedly negligent medical treatment at a facility at which she was entitled to seek other treatment as a result of her prior active service and the fact that Bradley would not have traveled to NNMC but for her prior service-related injury have nothing to do with Bradley's military "service except in the sense that all human events depend upon what has already transpired." Brooks, 337 U.S. at 52. Consequently, the fact that Bradley was scheduled for treatment at NNMC as a result of a service-related injury is not controlling.

The Government also argues that the true distinction between Brown and the present action is that in Brown the injured serviceman had been discharged while Bradley was a TDRL-status individual at the time of the allegedly negligent conduct. Under TDRL, Bradley was entitled to retirement pay, was not on active duty, and was not subject to being recalled to active duty. In order to continue to receive her TDRL benefits, Bradley was required only to present herself for periodic medical examinations. If she continued to be found unfit for duty for a period of five years, she would be placed on permanent retirement status. If she were to be found fit for duty, she would be given the option to reenlist or lose the benefits attendant to her TDRL status. While Bradley remained subject to the Uniform Code of Military Justice, see 10 U.S.C.A. § 802(a) (West 1998); McCarty v. McCarty, 453 U.S. 210, 221-22 (1981); Kendrick, 877 F.2d at 1204, failure to report for a required physical examination would only subject Bradley to termination of pay and administrative discharge.

The Government contends that because Bradley was subject to military discipline while on TDRL status, her medical treatment at a military hospital was incident to service. The courts of appeals have reached varying conclusions with respect to whether an action for military medical malpractice is barred by the Feres doctrine when the plaintiff was on TDRL status at the time the alleged tort was committed. Compare Cortez v. United States, 854 F.2d 723, 726-27 (5th Cir. 1989) (holding Feres doctrine did not bar FTCA suit for alleged medical malpractice committed against TDRL-status individual), with Ricks v. United States, 842 F.2d 300, 300-01 (11th Cir. 1988) (per curiam) (holding that because TDRL-status individual is entitled to

9

military benefits, injuries incurred in connection with those benefits are incident to service).[4] However, this court has suggested that the Feres doctrine does not bar an action by a TDRL-status individual "based upon a truly independent or post-service tort." Kendrick, 877 F.2d at 1204 n.2. And, we agree that although Bradley's status is not a full discharge, it is comparable to permanent retirement status, which has been held not to bar an FTCA claim under the Feres doctrine. See McGowan v. Scoggins, 890 F.2d 128, 137-39 (9th Cir. 1989) (holding that Feres doctrine did not bar a retired Army officer from suing for injuries suffered in an attack by military personnel while he was on the base to obtain a parking sticker). Thus, we conclude that Bradley's TDRL status is not a bar to suit, and accordingly, the district court erred in holding the Estate's action to be barred by the Feres doctrine.

---

**4** Relying on Ferens v. John Deere Co., 494 U.S. 516, 519 (1990), the Estate argues that we should apply the law of the Fifth Circuit because this action was transferred from that circuit and because the Government acted improperly in having the case transferred in order to take advantage of what it perceived to be the more favorable law of this circuit. We disagree. First, nothing in the record supports a conclusion that the Government had any improper motive in seeking the transfer. And, second, this court cannot and does not apply the law of another circuit simply because the case was transferred from the other circuit. The Ferens decision, on which Bradley relies, applied the doctrine announced in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), to hold that when a case that is governed by state law is transferred from one jurisdiction to another, the governing law remains the same notwithstanding the transfer. See Ferens, 494 U.S. at 519. But, unlike state law, federal law is presumed to be consistent and any inconsistency is to be resolved by the Supreme Court. See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987) (holding that transferee court should decide federal claim based on its own view of law without deference to law of transferor circuit); see also Clayton v. Warlick, 232 F.2d 699, 706 (4th Cir. 1956) (holding that "the same law, the federal ... law, will be applied wherever [the case] is tried" and thus choice of law questions should not influence a decision to transfer under 28 U.S.C.A. § 1404(a) (West 1993)). We, of course, apply the law of the Fourth Circuit, not the Fifth Circuit. However, as noted in text, the law of our circuit does not conflict with that of the Fifth Circuit in this instance.

10

III.

We reverse the grant of summary judgment in favor of the United States, concluding that the district court erred in ruling that Bradley's injuries were incident to service. The Estate's action is not barred by the <u>Feres</u> doctrine.

<u>REVERSED</u>

11